THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEROY EDWARD BROADNAX, Defendant-Appellant.

(No. 73-2;

Second District—October 16, 1974.

Ralph Ruebner and Richard Wilson, both of State Appellate Defender's Office, of Elgin, for appellant.

William Sisler, State's Attorney, of Freeport (James W. Jerz and Edward N. Morris, both of Model District State's Attorneys Office, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Defendant was tried before a jury upon indictments charging the offenses of armed robbery, robbery, and theft. The jury was unable to reach a verdict as to the armed robbery charge but defendant was convicted of the robbery and theft offenses. The court found that the theft was a lesser included offense in.the robbery charge and sentenced defendant on the robbery charge only, to a term of 5-15 years, to be served concurrently with a sentence in another county.

Defendant appeals, contending that he was not proved guilty beyond a reasonable .doubt and that the trial court committed reversible error in questioning the jury during their deliberations. In a supplemental brief defendant raises the alternative claim that even if we uphold the robbery verdict the judgment on the lesser included offense of theft must be vacated.

The robbery occurred on May 25, 1972, at the Eagle Food Store in a shopping mall in Freeport. Mrs. Marsh, the checkout clerk at the first register, testified that the man she positively identified in court as the defendant approached her and asked her if the manager was in. That when she said no, defendant stood in line at her register. When his turn came, he leaned over to Mrs. Marsh and said something she did not understand. He then told her to take a paper bag, put the money in it and do the same at the other registers. She observed at one point that he had a gun inside his coat.

Mrs. Marsh put the money from her register into the bag and walked with the defendant to the other registers which were manned. At the last cash register Mrs. Marsh tossed the bag filled with money to another checker, Mrs. Markman, telling her to run. Another checker, Mrs. Munz, told Mrs. Markman to give the bag to defendant. Mrs. Markman was confused and dropped the bag on the floor.

The witness testified that defendant then drew a gun and pointed it at her, picked up the bag and ran from the store.

Mrs. Marsh further testified that after she first saw defendant it was about 3 minutes before he got into her checkout line; that it was a

minute or two before he talked to the witness; and that the defendant was in the store approximately 5 minutes more.

She described the robber to the police as being a 5-foot 11-inch, 170-pound black, wearing a gray-green small hat, rounded sunglasses; a gray sports jacket with charcoal specks and "goldish" pants. She identified the hat and the jacket taken from defendant's car as the ones she had seen and had described to the police; but she could not positively identify the pants defendant was wearing as the solid-colored ones she had seen.

Another checker, Mrs. Munz, said she saw defendant in the store when Mrs. Marsh asked her if the manager was back and noticed his gray hat and gray sport coat. She saw him again when Mrs. Marsh came to her register with him and saw him from a distance of a foot or so when he stood beside her and had a gun pointing at Mrs. Markman. Both Mrs. Munz and Mrs. Markman positively identified defendant in court. There were some discrepancies in the testimony of the three checkers relative to the clothing worn by the robber, but their descriptions of the robber at the time of the offense were substantially similar.

David Fellenzer, an employee who chased the robber as he left the store came within 10 or 15 feet of the man in the parking lot. When he yelled for the man to stop, the robber turned on the employee pointing the gun at him. The witness dropped to the ground and next saw a red and white Ford, a 1962 or 1963 sedan, leaving the lot. There were no license plates on the car. The witness also identified defendant in court as well as a colored photograph of the car defendant was driving when apprehended.

A customer who was behind the robber in the checkout line and who said defendant turned to her and told her to "be cool" also made a positive in-court identification of defendant. Other customers in the store also identified defendant.

The police who received a call with descriptions of the man in the car shortly after the robbery pursued and stopped a car matching the description being driven by the defendant with no license plates displayed. The defendant was arrested and upon a search of the vehicle the police found the bag with the money, a zippered bag with a metal cast toy gun, which they described as a good replica of a Luger-type pistol or revolver, and a license plate on the rear floorboard. A hat, sunglasses and a sport coat similar to those described by witnesses at the store were also found in the car.

Shortly after the arrest Mrs. Marsh, Mrs. Munz and Fellenzer were brought to the station and viewed defendant through a one-way mirror. An officer requested that defendant put on the hat which had been recovered from his car and when he refused, the officer placed it on him.

The officer also testified that he possibly asked him to put the glasses on but he did not remember whether he had him put the coat on. Mrs. Marsh, Mrs. Munz and Fellenzer each testified that they identified the defendant as the same man who was in the store earlier that day. Mrs. Munz testified she identified defendant after he put on the jacket and hat but that she could tell that it was him before he put on these items. Fellenzer said that he positively recognized defendant after he put on his jacket and the hat.

In a lineup that was held the following day, defendant was again identified by Mrs. Markman and by several other of the witnesses who were in the store at the time of the robbery. At the lineup defendant refused to repeat the words which the participants were asked to repeat.

From this evidence defendant argues that defendant was convicted on the basis of eye witness testimony which was inherently suspect because the witnesses did not have a sufficient opportunity to observe and because the showup and lineup were impermissibly suggestive thus tainting the in-court identification made by the witnesses. From our examination of the entire record we do not agree.

■■ Identification testimony of even one witness is sufficient to sustain a verdict of guilty if the witness' testimony is positive and credible and based on an adequate opportunity to observe the accused. (*People v. Solomon* (1962), 24 Ill.2d 586, 591-592; *People v. Smith* (1974), 18 Ill.App.3d 859, 867.) Mrs. Marsh had a particularly adequate opportunity to observe the defendant and her identification was not substantially impeached. The weight of the testimony of the other eye-witnesses who had a somewhat lesser opportunity to see the accused but who also positively identified the defendant was a matter for the jury. *People v. Chapman* (1961), 22 Ill.2d 521, 524-5.

■■ The subsequent identification of defendant by three of the witnesses at a showup does not vitiate the identification testimony. The practice of showing suspects singly to persons for the purpose of identification and not as part of a lineup has been widely condemned, but it may be justified when prompt identification is necessary and where it is apparent that the witness had an excellent opportunity to observe the defendant during the commission of the crime. (*People v. McMath* (1970), 45 Ill.2d 33, 36; *People v. Simmons* (1970), 130 Ill.App.2d 614, 617.) And even if it could be said that the police station confrontation was unnecessarily suggestive it cannot be said that it was so conducive to irreparable mistaken identification that defendant was denied due process, there being no substantial likelihood of misidentification in view of the strong independent basis for defendant's identification. See *People v. Smith* (1974), 18 Ill.App.3d 859, 865.

■■■ The procedure followed in the subsequent lineup at which other witnesses identified the defendant was not unnecessarily suggestive. And the defendant cannot properly argue prejudice from the fact that he singled himself out by his apparent lack of cooperation.

Upon our review of the total record we cannot conclude that the evidence was so unsatisfactory as to raise a reasonable doubt of defendant's guilt. See *People v. Rawls* (1945), 389 Ill. 110, 112-113.

Defendant next urges that we should reverse and remand the case because of an inquiry made by the judge after the jury had begun its deliberations.

The jury began deliberating at 4:13 P.M. At 10:35 P.M. the trial judge called the jury back into the courtroom. In the presence of defendant and his counsel the following colloquy took place between the court and the jury foreman:

> "Now, Mr. Foreman, let me ask you, and I do not wish to— you to divulge what the numbers are or how you have voted or where you stand sofar as numbers are concerned, but let me ask you have you been able to reach a verdict?

By the Foreman of the Jury:

> We have not, your Honor.

By the Court:

> Have you reached a verdict on either of the counts, that is, as armed robbery, robbery, or the theft charge?

By the Foreman:

> We have reached a verdict on one count.

By the Court:

> And that is on what count?

By the Foreman:

> The third count, the theft.

By the Court:

> The theft count?

By the Foreman:

> Yes.

By the Court:

> Do you feel that if you are given additional time that you could reach a verdict as to the armed robbery and the robbery counts?

By the Foreman:

> I do not feel so, your Honor.

By the Court:

> Would you deliver to the bailiff and bring it to the bench the verdict that you—is that the verdict?

By the Foreman:

This is not signed yet.

By the Court:

I then ask the jury to return to the jury room if you have reached a verdict on one count and complete the verdict forms as to that count, and you will then inform the bailiff when you've done so, and then you will return back in court."

Approximately 10-20 minutes later, the jury returned to open court and their verdicts were read finding defendant guilty of theft and robbery, and it was reported that they were deadlocked on the armed robbery charge. The jury was polled and each juror confirmed the verdicts.

The defendant argues that it was reversible error to call the jury back into the courtroom after only 6 hours of deliberation since there was no prior indication that they would be unable to reach a verdict. He reasons that the effect of the court's inquiry was to advance the opinion of the judge that the jury were acting too slowly when the guilt of the defendant was obvious; and further speculates that the jury in an effort to satisfy the court and virtually without further deliberations and contrary to the court's instruction tacked on the robbery verdict as well as returning the theft verdict. We are not so persuaded.

■■■ It is a well established rule that communications from judge to jury should be made in open court in the presence of the parties; and that when any communication with the jury either by a judge or a third person is in any way calculated to prejudice the defendant, generally, a new trial will be awarded. (*People v. Brothers* (1932), 347 Ill. 530, 546.) Conversely, a jury verdict will not be set aside where it is apparent that no injury or prejudice has resulted from the communication. (*People v. Rettig* (1972), 50 Ill.2d 317, 319.) A mere inquiry by the court as to the possibility of a verdict, even when imprudently made out of defendant's presence, has been held not to be prejudicial so as to require a new trial. (*People v. Tilley* (1952), 411 Ill. 473, 478.) In *People v. McVet* (1972), 7 Ill.App.3d 381, 386, the court inquired, after approximately 3 hours of deliberations, whether the jury had reached a verdict; and then asked whether the jury was reasonably close. When this was answered in the negative the court instructed the jury to retire and further consider the case. We held that there was no reversible error since the remarks were not of the nature to unduly influence the jury. In *People v. Gardner* (1968), 98 Ill.App.2d 101, the court summoned the jury into the courtroom, after they had been deliberating somewhat over 2 hours and in the presence of defendants and their counsel asked the jury if they were about to reach a verdict. The foreman reported that they could reach a verdict as to one defendant only; the court then instructed them to re-

turn to the jury room and if they reached a verdict as to one defendant to so find and prepare their verdict on the other defendant. No reversible error was found. See also *People v. Canada* (1967), 81 Ill.App.2d 220, 234. *Cf. People v. Wilson* (1972), 51 Ill.2d 302, 309; *People v. Arnett* (1951), 408 Ill. 164, 170.

■■ The remarks here, reasonably viewed, were not of a prejudical nature. No reasonable implication can be derived from the remarks that the court intended to hasten a guilty verdict on either charge. They are clearly distinguishable from the court's statements in *People v. Baltimore* (1972), 7 Ill.App.3d 633, in which the court inquired whether the jury was able to reach a verdict of guilt or innocence without regard to the death penalty with the attendant conclusion that the remarks may have been reasonably construed by the jury as an opinion or suggestion by the court of defendant's guilt. In *People v. Rohwedder* (1967), 78 Ill.App.2d 211, also cited by defendant, there are the distinguishing circumstances that the chief judge, not the trial judge, called the jury back to inquire as to their progress in the absence of defendant or his counsel. This added to the possibility that the jury would interpret the inquiry to mean that it was time they brought in a verdict. If the case is intended to stand for the rule that the inquiry of itself is prejudicial error we do not agree with the conclusion.

■■ There has been some suggestion in oral argument that the court's instruction to return into open court with the signed verdict as to theft somehow deprived the jury of the right to further deliberate or act upon the robbery charge. No authority for this position has been offered and we can find no basis for the argument under the circumstances of this case.

■■ In a supplemental brief defendant raises an additional issue related to the entry of judgment on both the theft and the robbery verdicts. While the court imposed sentence only upon the robbery count, it was error, and the State so concedes, to enter judgment on the lesser included offense arising from the same acts. The judgment finding defendant guilty of theft is therefore vacated.

From our review of the whole record we are satisfied that defendant was convicted by proof beyond a reasonable doubt in a trial free from substantial error.

We therefore affirm the judgment finding defendant guilty of robbery and the sentence imposed thereon; and vacate the judgment finding defendant guilty of theft.

Affirmed in part; judgment vacated in part.

T. MORAN, P. J., and RECHENMACHER, J., concur.