THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CRAIG SATCHELL, Defendant-Appellant.

First District (1st Division)    No. 79-2253

Opinion filed March 23, 1981.

Daniel D. Yuhas and James K. Zerkle, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Gael McCaughey-O'Brien, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

The defendant, Craig Satchell, brings this appeal from his convictions for armed robbery, deviate sexual assault, and attempt rape for which he was sentenced to a single term of from 8 to 15 years. He raises the following issues on appeal: (1) whether the trial court erred in admitting evidence of an offense for which he was not charged; (2) whether comments by the prosecutor during closing argument denied the defendant a fair trial; (3) whether the defendant was denied his right to a speedy trial; (4) whether the defendant was proven guilty of attempt rape beyond a reasonable doubt where there was no evidence showing that a substantial step was taken towards the commission of that offense; and (5) whether the defendant's sentence exceeded that allowable for attempt rape.

We affirm the defendant's convictions but remand for resentencing.

The following facts relevant to this appeal were adduced at the trial of this matter. Beverly Fox, the complainant, testified that on August 13, 1974, she was at home when a man, who identified himself as a Mr. Garland, came to look at the 1973 Cadillac which she owned and had advertised for sale. The man arrived at complainant's residence in a white Grand Prix with maroon striping and out-of-State plates and described the car as belonging to his wife. The complainant explained that the two agreed on a price for her automobile and that he told her he would return the next day with the money. This visit lasted approximately 15 to 20 minutes. The next day, according to the witness, Garland returned with a second man and the three took the Cadillac out for a test drive. Upon returning to complainant's house Garland pulled a gun and directed the complainant to be seated at a chair in the kitchen. The second man then tied her to the chair with a plastic clothes line using a carving fork as a torniquet to tighten the rope. While Garland ransacked the house, the second man partially removed complainant's clothing so that she was virtually naked. He then fondled her and engaged in an act of cunnilingus. After this he exposed his erect penis to her and said, "This is what you're going to get." Before he could continue, however, Garland returned and after twice telling the second man that they did not have time for this, the two men left taking the complainant's car keys, title, and car. The complaining witness testified that she was unable to free herself but that she did manage to knock the phone off the hook as it was ringing and summon help.

According to the complainant's testimony, the police arrived and she answered their questions but because she was hysterical she could not remember exactly what they asked or what she answered. She believed that she told the officers that she had been sexually attacked but did not

remember for certain whether she told them how tall the two men were, about the test drive, that both men searched the house, that both men removed her clothes, that both men sexually assaulted her, or about the oral copulation. The complainant further testified she was shown a number of pictures on August 15, 1974, and viewed a lineup on August 16, 1974. She did not identify anyone on these occasions. She did identify Craig Satchell, however on August 17, 1974, from a yearbook picture and David Stribling on August 21, 1974, from a lineup. Stribling was identified as the man who had called himself Garland. At trial the complainant identified the defendant as the man who both accompanied Stribling to her home on August 14, 1974, and sexually assaulted her.

Police officer James Meli testified that he answered the original call at the complainant's home. He received a description of the complainant's assailants from her and broadcast this description and a description of the two cars given to him by several of complainant's neighbors. According to Meli, the complainant described her assailants as two men in the early 20's, one measuring between 5'6" and 5'8", weighing approximately 140 pounds, and the other measuring between 6'1" and 6'4" and weighing approximately 180 pounds. The complainant never told him of the test drive or the defendant having exposed himself to her, fondling her to having oral sex with her; however, he noted that his job was not to investigate the matter but rather to calm the complainant down and radio a description of the two assailants.

Police officer Frank Sadler testified that he and his partner, Officer Kirchens, investigated the instant case. He stated that pursuant to his questioning the complainant told him of the defendant having exposed himself to her but not of the oral copulation. He stated that the information which he received from complainant was not included in his police report because the report was just a summary of the investigation. Officer Sadler further testified that incident to the investigation of his case he and his partner took pictures to the complainant to review and had her view a lineup on August 16, 1974. The complainant made no identification from these; however, she did identify a photograph of the defendant from a yearbook supplied to her by them. She also identified Stribling from a lineup which she viewed on August 21, 1974. Incident to her identification of the defendant, Sadler and his partner arrested the defendant on August 23, 1974, and gave him his *Miranda* warnings. At this time the defendant told Sadler that he had only been along for the ride and that he disrobed the complainant but had never sexually assaulted her.

Other police testimony included the testimony of a criminal lab technician who stated that his search of the complainant's home produced no identifiable prints and the testimony of other technicians that finger-

prints were lifted from a 1974 Pontiac Grand Prix and a 1973 Cadillac. A comparison of these fingerprints revealed that the print recovered from the Grand Prix belonged to the defendant but that the print recovered from the Cadillac was not identical to the defendant's fingerprints. Other police testimony revealed that a Grand Prix, later identified by the complainant as that which was involved in this incident, was stopped and it was discovered that both the car and the out-of-State plates which it bore were stolen. The occupants of the car, who did not include the defendant, were arrested. In the trunk of this car Illinois plates AC 3040 registered to the complainant were also found. Police testimony also revealed that the complainant's 1973 Cadillac was stopped on August 21, 1974, bearing Ohio plates and its occupants, Stribling and King, were arrested. A .32-caliber Smith & Weston revolver was recovered upon searching Stribling. Police officer Basile who participated in Stribling's arrest testified that Stribling was subsequently placed in a lineup and identified by the complainant. He further testified that the defendant was not in the car at the time it was stopped.

Also testifying for the State was Alice Amerson, the owner of the 1974 Grand Prix used by the defendants and Stribling. She testified that her car was stolen on August 1, 1974, and not returned to her until August 10, 1974. She stated that she did not know the defendant nor had she given him permission at any time to be in her car. She did admit, however on cross-examination that her husband sometimes drove her car and that she did not know whether he allowed defendant in the car.

The only witness called by the defense, Officer Kirchens, testified that incident to the investigation the complainant told him while she was still hysterical of the test drive, defendant's actions in fondling her, the fact that defendant exposed his erect penis to her, and that he committed an act of oral copulation on her. Subsequent to this testimony, the jury returned a verdict of guilty on all three charges. After a presentence report was received and the defendant's post-trial motions denied, the defendant was sentenced to a single term of from 8 to 15 years. The trial court raised the defendant's minimum sentence to eight years because of the complainant's advanced age and the extreme brutality of the attack. A timely notice of appeal was filed.

The defendant's first argument raises an issue concerning whether the trial court erroneously allowed into evidence testimony of a crime, other than that for which he was on trial, to his prejudice. The State contends that the pertinent testimony was not evidence of a second offense but that if for argument's sake it could be construed as such it was relevant to establish the identity of the defendant and the *modus operandi* of the offense.

The general rule in Illinois is that evidence of other crimes is

inadmissible to show that the defendant has a propensity to engage in criminal activity; however, such evidence is admissible to place a defendant in proximity to the time and place, to aid or establish identity, to explain the circumstances of an arrest, or to prove design, motive, or knowledge. (*People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238; *People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E. 1200; *People v. Davis* (1981), 93 Ill. App. 3d 187, 416 N.E.2d 1179.) In determining whether evidence of other crimes may be admissible under this rule, courts look at whether the evidence of other crimes is so clearly connected with the main issue that it tends to prove the accused guilty of the crime for which he is being tried. (*People v. Durso* (1968), 40 Ill. 2d 242, 239 N.E.2d 842, *cert. denied* (1969), 393 U.S. 1111, 21 L. Ed. 2d 807, 89 S. Ct. 923; *People v. Tranowski* (1960), 20 Ill. 2d 11, 169 N.E.2d 347, *cert. denied* (1960), 346 U.S. 923, 5 L. Ed. 2d 262, 81 S. Ct. 290.) As such, the courts have sought to balance the actual need for the evidence and its convincingness and strength against the degree of prejudice to which the jury will probably be roused by the evidence. *People v. Connors* (1980), 82 Ill. App. 3d 312, 402 N.E.2d 773.

In the present case, over defense objection, Alice Amerson was allowed to testify that her 1974 Grand Prix was stolen and, therefore, not in her possession on the day the instant offenses were allegedly committed. The defendant asserts that this testimony should not have been allowed because, when it was considered in conjunction with testimony that a 1974 Grand Prix was driven to the complainant's home on August 13 and 14 and testimony that a print belonging to the defendant was subsequently found in a 1974 Grand Prix car along with complainant's license plates, it could have led the jury to infer that the defendant was involved in the theft of a Grand Prix, a crime for which he was not charged.

After carefully reviewing the record, we find that the Amerson testimony of the theft of her car could not necessarily be said to have constituted a reference to an offense committed by defendant for which he was not on trial. The evidence reveals that Stribling alone was in possession of this automobile the day before the incident and that, furthermore, the defendant was not with Stribling when he was arrested in the Grand Prix subsequent to the incident. We do not, therefore, think that this evidence would lead the jury to believe that the defendant was involved with Stribling in the theft of the Amerson automobile.

■■ Assuming arguendo that this evidence did suggest the defendant's participation in a theft, we believe that the evidence was admissible as it established that the owner of the Grand Prix was not involved in the theft and also corroborated the testimony of the complainant as to the involvement of the Grand Prix in the incident. Moreover, while we do not think that this evidence could be used to establish the defendant's *modus*

*operandi* (compare *People v. Connors* (1980), 82 Ill. App. 3d 312, 402 N.E.2d 773, with *People v. Tranowski* (1960), 20 Ill. 2d 11, 169 N.E.2d 347), we believe it did help to establish the defendant's identity. (*People v. Walls* (1965), 33 Ill. 2d 394, 211 N.E.2d 699.) The complainant identified defendant as her assailant. The fact that his fingerprint was found in the car allegedly driven to her home by one of the assailants the day before the incident and, according to bystanders, was also the car driven by the two men on the day of the incident, corroborated her identification. Accordingly, we do not find that the trial court erred in admitting this evidence.

The defendant next argues that certain statements of the assistant State's Attorney made during closing arguments denied him a fair trial. Our review of the record reveals no error in the alleged remarks. A prosecutor is allowed great latitude in closing argument and whether certain statements exceed the bounds of propriety depends upon the facts of each case. (*People v. Walsh* (1980), 80 Ill. App. 3d 754, 400 N.E.2d 587; *People v. Bigsby* (1977), 52 Ill. App. 3d 277, 367 N.E.2d 358.) Moreover, a trial court's determination of the propriety of the closing argument is not to be upheld absent a clear abuse of discretion. (*People v. Olejniczak* (1979), 73 Ill. App. 3d 112, 390 N.E.2d 1339.) However, we note that even where certain remarks are found to be improper, a verdict will not be reversed unless the record as a whole shows that the remarks constituted a material factor in the defendant's conviction. *People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363; *People v. Kitchen* (1977), 53 Ill. App. 3d 521, 368 N.E.2d 528.

■■■ In the instant case the prosecutor's comments concerning the stolen vehicle were based upon facts properly in evidence and, therefore, such remarks were proper. (*People v. Halteman* (1956), 10 Ill. 2d 74, 139 N.E.2d 286; *People v. Walsh*.) While the comments of the assistant State's Attorney that the victim "better get a great big gun" and that the public will have to lock their doors if the defendant is released, appealed to the prejudices and sympathies of the jury, in light of the whole record, the remarks do not constitute a material factor in the defendant's guilt. *People v. Clark; People v. Kitchen*.

■■ We turn next to consider the prosecutor's comments concerning the defendant's failure to call any witnesses to support the defendant's theory of the case that the defendant was not the man who assaulted the complainant and that the complainant's identification of him was erroneous. We do not believe that these remarks should be construed as a comment on the defendant's failure to testify, but, rather, were aimed at showing that the defense counsel had failed to prove what he had indicated that he would in his opening statement. It is proper in closing argument for the State to comment that their evidence is uncontradicted

(*People v. Vinson* (1978), 61 Ill. App. 3d 684, 378 N.E.2d 348), or that the defense counsel's argument is unsupported by fact (*People v. Jones* (1970), 47 Ill. 2d 66, 264 N.E.2d 189). Accordingly, we find no error in these comments.

We turn next to the defendant's arguments that he was denied his sixth amendment right to a speedy trial because he was not brought to trial within 120 days of his arrest as required by section 103—5 of the Code of Criminal Procedure. (Ill. Rev. Stat. 1973, ch. 38, par. 103—5.) At oral argument, it was made clear that the defendant alleges a violation of the 120-day rule only for the period from August 23, 1974, the date the defendant was first arrested, to December 21, 1974. No violation is alleged for the period following the defendant's second arrest. We note that, therefore, it appears that as in *People v. Jones* (1981), 84 Ill. 2d 162, 417 N.E.2d 1301, the defendant's argument does not raise a constitutional claim but rather concerns the State's compliance with the statute implementing the constitutional guarantee to a speedy trial. The State contends that this issue has been waived by the defendant's failure to make a motion for his release prior to his conviction and his failure to include this issue in his written motion for a new trial.

■■ It is well established in Illinois that a defendant is deemed to have waived his right to argue that he was denied a speedy trial unless he made an application or motion prior to trial or otherwise asserted his denial of a speedy trial before his conviction or in his post-trial motion. (*People v. Worley* (1970), 45 Ill. 2d 96, 256 N.E.2d 751; *People v. Taylor* (1965), 32 Ill. 2d 165, 204 N.E.2d 734; *People v. Pearson* (1980), 88 Ill. App. 3d 616, 410 N.E.2d 958.) Section 103—5 provides that a defendant in custody be tried within 120 days from the date he was taken into custody unless he occasions a delay, while a defendant out of custody on bail or recognizance shall be tried within 160 days of the date he demands trial unless he occasions a delay. (Ill. Rev. Stat. 1973, ch. 38, par. 103—5(a), (b).) If either of these sections is not complied with a defendant shall be discharged from custody or released from his bail or recognizance obligations.

■■ Our review of the record and in particular the memorandum of orders (half sheet) reveals that the defendant testified that he was released from custody three months after he was arrested which means that he would have been released about November 23. If he was not released until this date then the defendant's failure to appear in court on November 20, 1974, is unexplained and could well be said to have caused a delay which tolled the running of the 120-day period. The defendant has neither supplied accurate records of when he was released nor otherwise presented any evidence that he was not in custody at this time as is the duty of an appellant. However, even if the defendant was not in custody at this time, the defendant had pointed to no reference in the record which

would indicate that he made an application or demand for trial, nor has he explained his absence from the November 20, 1974, hearing. Nor does the record reveal that the issue of speedy trial was otherwise raised in the trial court. While the defendant filed a motion for a new trial and an amended motion for new trial, neither of these motions presented this issue for the trial court's consideration. At the sentencing hearing, the defendant personally tried to orally raise this issue, and his attorney subsequently attempted to adopt this argument as a part of the post-trial motion; however, as the State clearly objected to any issues raised orally rather than in written form, we believe that this issue was not properly presented to the trial court. (Compare, *People v. Pearson.*) Accordingly, we find no merit to the defendant's speedy trial argument.

■■ The defendant next asserts that he was not proven guilty beyond a reasonable doubt of attempt rape because the evidence showed no substantial step towards the commission of the offense. Two elements are necessary to prove the offense of attempt rape: (1) that the defendant had the necessary intent to commit the offense; and (2) that an overt act which constitutes a substantial step in the commission of a rape occurred. (Ill. Rev. Stat. 1973, ch. 38, par. 8—4; *People v. Bush* (1960), 19 Ill. 2d 151, 166 N.E.2d 91; *People v. Oetgen* (1978), 62 Ill. App. 3d 29, 378 N.E.2d 1355.) From our review of the evidence we find it clear that the defendant's acts of fondling the complainant, his commission of an act of oral copulation on complainant, and the exposure of his erect penis to complainant with his accompanying statement to her reveal his intent to commit the rape. (*People v. Triplett* (1970), 46 Ill. 2d 109, 263 N.E.2d 24, *cert. denied* (1971), 401 U.S. 955, 28 L. Ed. 2d 239, 91 S. Ct. 976; *People v. Oetgen*), and suggest a substantial step in the commission of that offense. (*People v. Oetgen; People v. Hanley* (1977), 50 Ill. App. 3d 651, 365 N.E.2d 676.) The evidence provides ample support for the conclusion that at the point in time that Stribling convinced the defendant that it was time to leave the complainant's home, no other act on the defendant's part was necessary to accomplish the rape except for penetration. Therefore, we believe that the evidence supports a finding of the defendant's guilt on the charge of attempt rape beyond a reasonable doubt.

■■ The defendant next alleges that his 8- to 15-year sentence imposed by the court exceeded that permissible for the attempt rape conviction. The sentence for rape shall not exceed the sentence for a Class 2 felony (Ill. Rev. Stat. 1973, ch. 38, par. 8—4(c) (2) with a minimum sentence of one year unless the court deems the facts justify setting a higher minimum which shall not be greater than one-third of the maximum term. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c) (3).) As such, the defendant could not be sentenced to a term of 8 to 15 years on the attempt rape. However,

in the instant case, we are unable to determine whether this sentence was imposed on the attempt rape conviction or on either the armed robbery or deviate sexual assault conviction. While a criminal judgment is not final until a sentence is imposed (Ill. Rev. Stat. 1973, ch. 38, par. 1005—1—12; *People v. Warship* (1974), 59 Ill. 2d 125, 319 N.E.2d 507; *People v. Olmos* (1978), 67 Ill. App. 3d 281, 384 N.E.2d 853), the trial court here entered judgment on three offenses but only imposed a single term. As the State has not argued that these offenses either arise out of the same act or are lesser included offenses so that only one sentence was proper (see *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273), and has not opposed remanding this case for resentencing, we remand this cause to the trial court for resentencing. *People v. Olmos.*

For the reasons set forth we affirm the defendant's conviction but remand the cause to the circuit court of Cook County with directions to resentence the defendant.

Convictions affirmed; sentence vacated and remanded.

McGLOON and O'CONNOR, JJ., concur.