THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOE HARRISON, Defendant-Appellant.

First District (1st Division)    No. 80-2665

Opinion filed April 26, 1982.

Thomas Peters, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Ruth Stern Geis, and James B. Koch, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Defendant was found guilty by a jury of murder and armed violence and was sentenced to a term of 30 years. On appeal, defendant contends that: (1) the trial court erred in permitting the jury to resume deliberations after the jury had returned a verdict on one of four charges; (2) the trial court erred when, after accepting a verdict on one of four charges, it ordered the jury to continue deliberations without first determining whether the jury had reached any other verdicts or without providing the jury with cautionary instructions; (3) the testimony of the only occurrence witness was insufficient to establish the guilt of defendant beyond a reasonable doubt; (4) the trial court erred in failing to give the jury an accomplice instruction; (5) the trial court erred when it admitted into evidence, over defendant's objection, the arresting officer's statement that he had seen defendant's photograph in a daily police bulletin; and (6) the State made improper comments during closing argument which warrant reversal.

For the reasons set forth herein, we affirm.

The first witness for the State was Betty Perry, who lived with the decedent Timothy Bey. Perry stated that during the late evening hours of February 26, 1979, or the early morning hours of February 27, 1979, she saw Bey, defendant Joe Harrison and one Sims enter her apartment. Perry then identified defendant Harrison in court. She testified that when she saw the three men enter her apartment, she was on her way to visit her girlfriend in a downstairs apartment. She stated that she twice left her girlfriend's apartment and returned to her apartment. On each occasion, she observed Bey and defendant playing dice and Sims sitting in a chair. Perry stated that she returned to her apartment a third time and observed that the door to the apartment partially was opened. She then entered the apartment and saw Timothy Bey lying on the floor. According to Perry,

the apartment was "all messed up." She stated that his papers and wallet were scattered and that there was blood on the floor of the kitchen.

Darryl Sims testified that he had known defendant for approximately seven months prior to February 27, 1979. Sims stated that he had met defendant and Harrison at a pool hall earlier and that he decided to accompany Bey and Harrison to Bey's apartment to play dice. According to Sims, defendant and Bey had played dice earlier that day and decided to go to Bey's apartment "to shoot some more dice." Sims testified that Bey had said that he had $500 at his apartment. According to the witness, the three men arrived at the apartment at approximately 12:30 a.m. on February 27, 1979. Sims stated that as the dice game began, Betty Perry left the apartment. Sims testified that he watched Bey and defendant shoot dice and that defendant and Bey also were drinking wine. According to Sims, the dice game lasted for 15 or 20 minutes. He stated that while Bey and defendant were playing dice, Perry returned to the apartment "about three times." Sims stated that defendant had won approximately $35-$40 from Bey at the time the game ended. Defendant then asked Bey where the remainder of his money was. The witness stated that Bey told defendant that he did not have any more money, whereupon defendant removed a gun from his coat, aimed it at Bey and repeated his demand for money. Sims testified that Bey took Sims' knife from a slot on the side of Sims' carpenter pants. After Bey took the knife, he retreated to the apartment bedroom. Sims stated that he went into the bedroom after Bey and told Bey that there was no sense in trying to fight with a knife against a gun. Bey then pushed Sims and told Sims that there was nothing else that could be done. Sims testified that defendant then entered the bedroom and Bey grabbed the barrel of the gun. During the struggle, Bey was cut and dropped the knife. Bey then went into the kitchen and he was followed by defendant. Defendant aimed the weapon at Bey who was behind the refrigerator. As Bey began to "ease out of the kitchen," he grabbed the barrel of the gun. Sims stated that Bey and defendant again struggled and that the first shot was fired while Bey held the barrel. Sims testified that the bullet struck the television set. He stated that the two men separated and that Bey "broke for the door." He testified that defendant was approximately 4-5 feet from Bey when he fired the gun at Bey as Bey was trying to leave the apartment. He stated that Bey was struck by a bullet near the right eye and that Bey then fell to the floor. Sims testified that defendant then removed Bey's wallet and, after inspecting the contents, stated that Bey did not have any more money.

Sims testified that he told defendant that defendant had killed Bey. As defendant and Sims were leaving the apartment, defendant told Sims to be quiet and to say nothing about the incident. Sims stated that

defendant drove Sims home and, as Sims exited the car, stated, "Remember, you got a wife and family."

On cross-examination, the witness stated that he had spoken with various police officers about his observations of the evening of the shooting. Sims stated that, to his knowledge, he never was accused of the murder of Bey, although he acknowledged that he was read his *Miranda* rights. He testified that he was at the police station for a period of four days. Sims stated that he went to the police station at approximately 8 a.m. of the morning following the shooting. He testified that, while he was at the police station, he had signed a consent form authorizing the search of his home and that he informed the police officers of the location of the knife which he had hidden. Sims stated that on the evening of the shooting, he was not intoxicated or under the influence of any drugs. The witness testified that the pants which he had worn that evening had blood stains and that his wife had laundered the pants because it was washday. On redirect examination, the witness stated that he went to the police station on the morning following the shooting because the police had requested him to come to the station. He testified that Bey's blood probably was on his pants because he had put the knife which had blood on it into the slot in his trousers. On further recross-examination, Sims stated that he told the police substantially the same account of events that he related in court.

Officer Salvadore Colello of the Chicago Police Department testified as to the condition of the apartment when he arrived there at approximately 1 a.m. on February 27, 1979. The State next called Officer Paul Venticinque who had arrested defendant. He stated that he recognized defendant from a photograph in a daily police bulletin and that the bulletin indicated that defendant was being sought for a murder. On cross-examination, the witness stated that he was off-duty at the time the arrest was made and that he had drawn his gun. On stipulation by the parties, the court read to the jury an agreed statement of facts concerning the autopsy of the decedent. The court told the jury that an autopsy by the Office of the Cook County Medical Examiner disclosed that the cause of death was a bullet wound to the head. According to the statement, Timothy Bey was 30 years of age, was 5'11" tall and weighed 196 pounds. A blood toxicology report disclosed that Bey had consumed an alcoholic beverage prior to his death and that analysis of the decedent's urine did not disclose the presence of opiates or barbituates.

The defense called Officer Investigator Thomas Blomstrand of the Chicago Police Department as its sole witness. Blomstrand testified that he had an opportunity to speak with Darryl Sims on February 27, 1979. He stated that Sims told him that defendant had won approximately $60-$80 in the earlier dice game that day between defendant and Bey. He

stated that Sims had told him that Sims had wrestled with the decedent in the bedroom of Bey's apartment and that Bey had exited the kitchen and jumped onto defendant and that Bey and defendant wrestled in the living room of the apartment.

After deliberating for a short while, the jury announced to the court that it had reached a verdict and tendered to the bailiff the verdict forms. The jury found defendant guilty of armed violence-murder and did not sign any of the remaining verdict forms. The State then asked the court about the remaining verdict forms and the court responded that the one guilty verdict was the only verdict returned by the jury. The State requested the court to order the jury to resume deliberations on the remaining verdict forms. The court refused and stated that it had accepted the one verdict as the verdict of the jury. The court also noted that the one guilty verdict served as an acquittal on the remaining charges. After further discussion, the court agreed to permit the State to research the law during which time the jury would be held. The State subsequently presented to the court the case of *People v. Wilson* (1972), 51 Ill. 2d 302, 281 N.E.2d 626, where the supreme court held that a finding by a jury does not become a verdict until it is received, accepted by the court and entered of record. The trial court indicated that it was bound to follow the procedure set forth in *Wilson* and indicated that the remaining verdict forms did not serve as acquittals because it had not entered judgment. The court also indicated that no authority for the proposition that unsigned verdict forms operate as an acquittal had been found. The court indicated that it was aware that armed violence is a crime which requires the commission of a felony while armed with a dangerous weapon (Ill. Rev. Stat. 1977, ch. 38, art. 33A), and that, therefore, the jury must have concluded that all the elements of murder existed in order to find defendant guilty of armed violence-murder. The court also expressed concern that if it discharged the jury, it could not correct that decision at a later time, whereas if it permitted the jury to resume deliberations, the court could rectify any mistake that may have been made. The court then instructed the jury to continue its deliberations on the remaining verdict forms. Thereafter, the jury returned a guilty verdict on the murder charge and not guilty verdicts on the remaining charges. Defendant subsequently was sentenced to a term of 30 years.

Defendant first argues that it was improper for the court to permit the jury to resume deliberations on the unsigned verdict forms after the court had accepted the jury's finding of guilty on the armed violence-murder charge. Defendant contends that by returning only one signed verdict form, this operates as an acquittal on the remaining charges. (See *People v. Rehberger* (1979), 73 Ill. App. 3d 964, 392 N.E.2d 395.) Defendant argues that the trial court improperly relied upon *People v.*

*Wilson* (1972), 51 Ill. 2d 302, 281 N.E.2d 626, where the court ordered the jurors to return to the jury room and sign the uncompleted verdict forms prior to the reading of the verdict in open court and without the court knowing what the jury's verdict was. Defendant contends that once the signed verdict form is read in open court, it becomes a final verdict, especially after the court has accepted the verdict. (See *People v. Rehberger* (1979), 73 Ill. App. 3d 964.) Defendant also cites *People v. Gallas* (1966), 77 Ill. App. 2d 132, 221 N.E.2d 782, where the trial court entered judgment on defendant's motion for a directed verdict at the close of the State's case, but later rescinded the order. On appeal, this court held that once judgment is entered, it cannot be rescinded because to do so would violate defendant's constitutional rights. Defendant argues that the situation in the instant case is analogous to *Gallas.*

■■ In *Wilson*, the supreme court held that the finding of a jury does not become a final verdict until it has been received, accepted by the court and entered of record. In the instant case, the court received and accepted the jury's finding, but it did not enter that finding of record. We also note that the court specifically indicated, when making its ruling, that no judgment has been entered. Therefore, we conclude that there was no final verdict of the jury as defendant contends and the jury's finding does not serve to acquit defendant of the remaining three charges. (See *People v. Wilson* (1972), 51 Ill. 2d 302.) *Gallas* is distinguishable from the instant case since, in that case, the court had entered a memorandum order granting defendant's motion for a directed verdict and that order subsequently was rescinded by the court. This court held that a reinstatement of the charge against defendant after the court had dismissed the charge constituted double jeopardy and, therefore, violated defendant's constitutional right. We also view *People v. Rehberger* to be inapposite since in that case, the court declared a mistrial after the jury was unable to reach a decision on two of six charges against defendants. The court then discharged the jury. Three and one-half months later, the court entered judgment on the four guilty findings. This court held that the finding of the jury does not become a final verdict until it has been received, accepted by the court and entered of record. In *Rehberger*, the trial court had discharged the jury prior to the jury's findings being read in open court and, therefore, the jury's findings were never received. In addition, there was no opportunity to poll the jury concerning its findings. Accordingly, the court could not accept the findings of the jury.

■■ Related to defendant's contention that the trial court erred in permitting the jury to continue to deliberate is his claim that the trial court erred in failing to provide cautionary instructions to the jury upon the resumption of deliberations. Defendant claims that by ordering the jury to resume deliberations on the remaining three charges against defendant,

the court's order implied that the jury must reach a verdict and that guilty verdicts must be reached. We have reviewed defendant's arguments and that portion of the record at issue and we believe that the remarks of the court to the jury were neutral and not of a nature which would influence the jury to find defendant guilty. (See *People v. Broadnax* (1974), 23 Ill. App. 3d 68, 318 N.E.2d 499.) We also note that defendant does not indicate the nature of cautionary remarks which he believes would have been appropriate under the circumstances.

Defendant next contends that the evidence was insufficient to establish his guilt beyond a reasonable doubt. Defendant argues that extra caution must be taken in our review of this case because the State relies upon the uncorroborated testimony of Darryl Sims who, at one time, was the primary suspect of the police investigation. (See *In re Brown* (1978), 71 Ill. 2d 151, 374 N.E.2d 209; *People v. Wilson* (1977), 66 Ill. 2d 346, 362 N.E.2d 291.) Defendant argues that *In re Brown* is indistinguishable from the instant case. In that case, which involved the adjudication of wardship, a minor was charged with aggravated battery. The sole witness for the State was another minor who previously had been charged with the crime and whose testimony varied from his prior statements made to the police. The supreme court affirmed reversal of the case because the testimony of the witness was insufficient to establish guilt beyond a reasonable doubt. Defendant argues that such testimony must be viewed with caution under *Brown* and *People v. Wilson* (1977), 66 Ill. 2d 346, 362 N.E.2d 291. Defendant urges that Sims' testimony at trial "strains the imagination to its limits." Defendant points to various aspects of Sims' testimony which he claims support his argument. He argues that it is difficult to believe that Sims merely observed the dice game between defendant and Bey, that he did not have money with him and that he did not consume any alcohol at Bey's apartment. Defendant contends that Sims' testimony concerning the shooting of Bey is highly improbable. Defendant also argues that Sims' behavior following the shooting indicates that Sims knew that he would be a suspect in the shooting and that, by implicating defendant, Sims had everything to gain.

A reviewing court will not disturb the jury's verdict of guilty unless the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt as to defendant's guilt. (*People v. Lewis* (1981), 88 Ill. 2d 129, 430 N.E.2d 1346; *People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363.) In the instant case, it is clear that the reasonable doubt issue focuses on the issue of the credibility of Darryl Sims. Since the jury found defendant guilty of murder and armed violence-murder, it did believe the testimony of Sims. It is the function of the trier of fact to evaluate the credibility of the witnesses, the weight to be given to their testimony and the inferences to be drawn from the evidence. (*People v. Akis* (1976), 63

Ill. 2d 296, 347 N.E.2d 733.) We cannot say that the testimony of Darryl Sims is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of defendant's guilt. See *People v. Lewis; People v. Clark.*

■ Defendant next argues that the trial court erred in failing to read to the jury an accomplice witness instruction. (Illinois Pattern Jury Instructions, Criminal, No. 3.17.) Defendant argues that the activities of Darryl Sims on the morning of the shooting were sufficient to conclude that Sims was involved in the commission of the crimes and, therefore, should be considered an accomplice witness. Since neither the State nor defendant tendered this instruction at trial, defendant argues that the failure of the court to give *sua sponte* this instruction constitutes "plain error" and compels reversal. (See *People v. Neal* (1975), 26 Ill. App. 3d 22, 324 N.E.2d 476.) We view defendant's contention to be without merit. An "accomplice" has been defined as "one who could himself have been indicted for the offense either as principal or accessory * * *." (*People v. Nowak* (1970), 45 Ill. 2d 158, 168, 258 N.E.2d 313, 318.) At trial, there was no evidence to support defendant's argument on appeal that Sims was an accomplice. Accordingly, the failure of the trial court to instruct *sua sponte* the jury concerning the testimony of an accomplice witness was not error. See *People v. Parks* (1976), 65 Ill. 2d 132, 357 N.E.2d 487; *People v. Nowak.*

■ Defendant next argues that the trial court erred in permitting the State to question the officer who arrested defendant about the daily police bulletin which contained a photograph of defendant. He urges that by allowing this line of questioning, it gave to the jury the appearance that defendant had been involved in other criminal activities and this may have affected the jury's determination of his guilt. (See *People v. Wheeler* (1979), 71 Ill. App. 3d 91, 388 N.E.2d 1284; *People v. Hawkins* (1972), 4 Ill. App. 3d 471, 281 N.E.2d 72.) Defendant claims that evidence concerning the photograph in the bulletin suggested criminal activity which was unrelated to charges against defendant and, therefore, such testimony was incompetent and prejudicial. (See *People v. Hawkins.*) The State contends that the evidence concerning the police bulletin was properly admitted because it relates to the circumstances surrounding defendant's arrest which connected defendant to the murder of Timothy Bey. See *People v. Cheatem* (1976), 35 Ill. App. 3d 414, 342 N.E.2d 410.

The two cases cited by defendant involve the introduction of mug shot photographs upon which was imprinted the name of the police department and the date of the photograph which was prior to the date on which the crime with which defendant was charged occurred. There is no suggestion by defendant in the instant case that the jury could determine solely through the officer's testimony when the photograph which

appeared in the police bulletin was taken. The testimony of the officer concerned the circumstances surrounding defendant's arrest. (See *People v. Cheatem.*) We do not believe that defendant has established that the admission of testimony of the officer resulted in prejudice to defendant or was an abuse of discretion. See *People v. Warmack* (1980), 83 Ill. 2d 112, 413 N.E.2d 1254; *People v. Hawthorne* (1978), 60 Ill. App. 3d 776, 377 N.E.2d 335.

Defendant's final contention is that the prosecution's misconduct during closing argument warrants reversal of this cause. Defendant argues that the prosecution's references to the evidence as being uncontradicted unduly focuses on defendant's failure to testify in his defense and that this resulted in a violation of defendant's right to remain silent. (See *People v. Escobar* (1979), 77 Ill. App. 3d 169, 395 N.E.2d 1028; *People v. Edwards* (1979), 77 Ill. App. 3d 237, 395 N.E.2d 1095.) The State contends that it is permissible to comment during closing argument that the evidence is uncontradicted. (See *People v. Satchell* (1981), 94 Ill. App. 3d 422, 418 N.E.2d 1063; *People v. Vinson* (1978), 61 Ill. App. 3d 684, 378 N.E.2d 348.) The State argues that its reference to the uncontradicted evidence was not designed to highlight the failure of defendant to testify, but rather was a plain and accurate summarization of the evidence presented at trial. *People v. McTush* (1978), 61 Ill. App. 3d 214, 377 N.E.2d 1148.

■■ In the instant case, counsel for defendant objected to the State's reference to the testimony as being uncontradicted on only two occasions. In the first instance, the court overruled defendant's objection, while in the second instance, the court sustained the objection. Under the circumstances presented herein, we do not believe that the State was attempting to draw the jury's attention to the fact that defendant did not testify, rather we view the comments of the prosecution during closing argument to be a permissible comment on the evidence. (See *People v. Satchell* (1981), 94 Ill. App. 3d 422, 418 N.E.2d 1063; *People v. Vinson* (1978), 61 Ill. App. 3d 684, 378 N.E.2d 348.) As to those references to the testimony being uncontradicted where counsel for defendant failed to object, we hold that the failure to object serves as a waiver of any objection on appeal. *People v. Vinson*; see also *People v. Hanson* (1972), 53 Ill. 2d 79, 289 N.E.2d 611, *cert. denied* (1973), 411 U.S. 937, 36 L. Ed. 2d 398, 93 S. Ct. 1916.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McGLOON and O'CONNOR, JJ., concur.