STATE of Missouri, Respondent,

v.

Matthew J. SCHUMACHER, Appellant.

No. WD 60244.

Missouri Court of Appeals, Western District.

Oct. 8, 2002.

Anthony C. Cardarella, District Public Defender, St. Joseph, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Jefferson City, Philip M. Koppe, Assistant Attorney General, Kansas City, for respondent.

RONALD R. HOLLIGER, Judge.

Matthew Schumacher appeals his conviction for one count of possession of a controlled substance with intent to distribute [1] after his retrial following the declaration of a mistrial on one of three counts. He argues only one point, contending that his retrial was barred by the double jeopardy clause because the jury, at the first trial, had taken a vote, unanimously agreed to acquit, and the foreperson had signed a not guilty verdict form on the charge of felony possession with intent to distribute. Because the not guilty verdict was never presented to the trial court as the verdict of the jury, we affirm.

## THE ORIGINAL CHARGES AND TRIAL

Schumacher was originally charged with one felony count of drug possession (involving the same offense that is the subject of this appeal) and two drug-related misdemeanor counts.[2] On August 14, 2000, the jury began deliberations at 4:12 P.M. At 8:57 P.M., the jury requested new verdict forms for Counts II and III saying that they had reached a verdict on *all three counts*. At 9:16 P.M., the bailiff returned from the jury room indicating that verdicts had *not been reached*. The court instructed the jury to continue to deliberate and then dismissed them for the night at 10:35 P.M. On August 15, 2000, at 9:29 A.M., the jury indicated it was deadlocked. The court gave the "hammer instruction," MAI–CR 3d 312.10, and returned the jury for further deliberations.

At 10:23 A.M. the court summoned the jury. The foreperson indicated that the jury had reached verdicts on Counts II and III but was deadlocked on Count I. The foreperson handed the completed forms to the bailiff stating, "Count I is also in there, but that has been voided from last night." [3] The court proposed to poll the jury on each count. Seven jurors responded that the "not guilty" verdict on Count I was their verdict. Five answered that it was not. Each juror indicated his agreement with guilty verdicts on Counts II and III. The court then declared a mistrial as to Count I and discharged the jury, accepting the verdicts as to Counts II and III.

Immediately thereafter, the foreperson informed the court that the jury did not in fact agree to the punishments they had recommended for Counts II and III. She explained that those forms were filled out when, as a compromise, the jurors had agreed to acquit Schumacher on Count I. The foreperson reported that the jurors felt that the punishments for Counts II and III should be lighter because there was no acquittal on Count I.

Without addressing the fact that the jury was already discharged, the court polled the jury again as to each count. At that point, eight jurors responded that the "not guilty" verdict on Count I was their verdict. As to Counts II and III, the court determined that there was not unanimity as to the assessment of punishment and sent the jury back up to deliberate again on *all three counts*.[4]

1. Section 195.211, RSMo 2000.

2. Count II charged misdemeanor possession of a controlled substance, § 195.202; and Count III, misdemeanor possession of drug paraphernalia, § 195.233.

3. As the form appears in the record, the word "void" is written across its face. The State admits that the form was not marked "void" when it was handed to the court.

4. There was no discussion at trial as to why the jury was directed to resume deliberations upon Count I after the mistrial was declared. The defendant did not object or approve. Because it is not an issue here, we do not suggest either approval or criticism of send-

At 11:45 A.M., the jury returned, still unable to reach a verdict on Count I, but unanimous as to guilt and assessment of punishment on Counts II and III. The court accepted the new verdicts as to Counts II and III and again declared a mistrial on Count I.

## THE SECOND TRIAL

Before the second trial, the defense filed a motion to dismiss the information based on double jeopardy. At a hearing, the State objected to a defense attempt to present the testimony of two jurors regarding the initial deliberations in the first trial. The court sustained the objection, and no error is raised as to that ruling.[5] By way of an offer of proof, both jurors testified that there was a point at which all twelve had agreed to acquit Schumacher on Count I but that one of them had changed her mind. The motion to dismiss the information was overruled and Schumacher was retried on Count I. He was convicted and sentenced to five years. He appeals that conviction.

## ANALYSIS

■ Schumacher raises one point on appeal. He argues that the trial court erred in overruling both his motion to dismiss Count I after the first trial and his motion for judgment of acquittal after the second trial, because his retrial on Count I consti-

tuted double jeopardy as a result of the first jury's agreement to acquit him on that Count.

The question of whether Schumacher's right to be free from double jeopardy has been violated is a question of law and is reviewed *de novo*. *State v. Griffin*, 28 S.W.3d 480, 481 (Mo.App.2000). Schumacher argues that the agreement reached by the jurors constituted a verdict of acquittal, after which retrial should have been prohibited. The Missouri Constitution provides that no person shall "be put again in jeopardy of life or liberty for the same offense, after being once acquitted by a jury." Mo. Const. art. I § 19.

■ Missouri law requires the jury's verdict to be unanimous, in writing, signed by the foreperson, and returned in open court. Rule 29.01(a), *State v. Perry*, 643 S.W.2d 58, 61 (Mo.App.1982).[6] Here, the jury apparently agreed at one point during deliberations to acquit Schumacher on Count I, and the foreperson signed the form. The jury did not, however, return the verdict in open court. To the contrary, the foreperson explicitly stated that the not guilty verdict form was included with the instructions and other forms but that it was "void." Even if we were to give no legal effect to the foreperson's description, the result would be the same. The court polled the jury and confirmed that the jurors did not have a unanimous

---

ing the jury back to continue deliberations on Count I.

**5.** The reception of testimony from jurors as to their deliberations should be limited to the most egregious situations that affect the sanctity of the juror's oath. Even claims of juror "misconduct" during deliberations should be limited in scrutiny. Regular inquiry to jurors by counsel as to the internal discussions, votes, etc., of the jury would threaten the integrity, particularly in criminal cases, of a system that depends upon citizen juror trust that he or she need not fear improper pres-

sure from either government or accused as a result of positions taken during jury service.

**6.** The State argues that a final verdict further requires: acceptance by the trial court, *State v. Peters*, 855 S.W.2d 345, 349–350 (Mo. banc 1993); entering of record by the trial court, *People v. Harrison*, 106 Ill.App.3d 341, 62 Ill.Dec. 239, 435 N.E.2d 1211, 1214 (1982); and discharge of the jury, *Peters* 855 S.W.2d at 349–50. Because there was no return in open court here, we do not address any subsequent steps.

verdict to acquit Schumacher of Count I.[7] Rule 29.01(d) provides:

When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. *If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged.* (Emphasis added).

Clearly, this procedure contemplates and intends that an individual juror (if polling takes place) can change his or her mind and refuse to accede to the previously apparent unanimous verdict, whether guilty or not guilty.

An unusual series of events and circumstances conjoined to give us a window into the jury room. We know of the jury's initial agreement only because the jury summoned the bailiff before the dissenting juror changed her mind as to Count I. We know that the agreement was reduced to writing only because the foreperson gave the trial court the "void" not guilty verdict form. Were it not for the foreperson's willingness to expound upon the sequence of events and the offer of proof made of the jurors' testimony, we would not know the precise sequence of events.

■ It has long been the rule in Missouri that jurors speak through their verdict and that they "cannot be allowed to violate secrets of the jury room." *State v. Linn,* 223 Mo. 98, 122 S.W. 679, 682 (1909) (citing *State v. Underwood,* 57 Mo. 40, 52 (1874)). Were we to hold that the jury's transitory decision bound them and that jeopardy attached at the moment the fore-

person signed the acquittal form, then we would encourage inquiry into those secrets. This we will not do. Even if we were to assume the not guilty verdict on Count I was returned in open court, the subsequent polling of the jury members destroyed any unanimity, and it, therefore, did not constitute a verdict. *Perry,* 643 S.W.2d at 61.

The judgment of the trial court is affirmed.

PATRICIA A. BRECKENRIDGE, Presiding Judge, and VICTOR C. HOWARD, Judge, concur.

struction was not read to the jury. Failure to follow these procedures can constitute reversible error. *State v. Richardson,* 951 S.W.2d 718, 721 (Mo.App.1997). However, the parties do not raise this issue, and we do not consider it.

---

**7.** We note that when the jury indicated that it was deadlocked as to Count I, the court's inquiry as to whether the conflict concerned the issue of guilt or the issue of punishment ignored MAI–CR 3d 312.02. The court did not follow the procedure dictated by the notes on use for MAI–CR 3d 312.02, and that in-