THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GAINES WEBSTER, Defendant-Appellant.

First District (2nd Division)   No. 86—105

Opinion filed September 20, 1988.—Rehearing denied October 12, 1988.

Steven Clark, of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Kim A. Novi, and Clarke P. Devereux, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

Following a jury trial, defendant was convicted of one count each of aggravated criminal sexual assault and attempt (aggravated criminal sexual assault). The trial judge sentenced him to 60 years' imprisonment for aggravated criminal sexual assault, ruling that the other charge "merged." Defendant appeals, raising the following issues: (1) whether the Illinois criminal sexual assault statute (Ill. Rev. Stat. 1985, ch. 38, pars. 12—12 through 12—14) is unconstitutional; (2) whether he was provided with effective assistance of counsel; (3) whether he was denied a fair trial by the trial court's admission of repetitious testimony and improper hearsay; (4) whether there was sufficient evidence to convict him of attempt (aggravated criminal sexual assault); (5) whether the trial court incorrectly instructed the jury; (6) whether certain of the prosecutor's remarks made during rebuttal argument denied him a fair trial; and (7) whether the trial court abused its discretion in sentencing him to 60 years' imprisonment.

Defendant was charged in a 70-count information with having committed various acts of illegal conduct against the complaining witness; however, the State proceeded to trial on only five of the charges, including two counts of aggravated criminal sexual assault, one count of attempt (aggravated criminal sexual assault), one count of aggravated kidnapping and one count of aggravated battery.

At trial the complaining witness testified as follows. On September 10, 1984, Sherry Pulanski, a friend of the complainant's, was struck by a man who broke her nose. The complainant and Pulanski called the police, who took them to Chicago's Holy Cross Hospital. While at the hospital, the complainant decided to go to the home of Pat Sala, another friend, to obtain a ride for herself and Pulanski. She walked from Holy Cross Hospital, located at 67th Street and California Avenue, to Sala's house, some blocks away at 63rd Street and

Richmond Avenue. Sala agreed to provide a ride home, but said that since she had company she would wait for the complainant and Pulanski at her home. The complainant then returned to the hospital, but upon arriving at the hospital she was told that Pulanski had already left for Sala's home, so she decided to walk back there.

As the complainant walked northbound on the west side of California Avenue she noticed a large, dark car drive by slowly while the driver, a man whom she later identified as defendant, looked at her. After passing her, defendant turned the car left off California in a westbound direction on 65th Street, and parked in the first space with the car door open and the engine running. He walked onto California Avenue and looked down the street, as if he were searching for something. The complainant continued walking, turning west on 64th Street, and as she approached an alley about a block from Sala's house, defendant grabbed her around the throat, holding a broken bottle in his free hand, with which he cut the complainant's neck and forearm. Defendant ordered her not to scream and told her "I could still fuck you if I cut you."

Defendant dragged the complainant to his car, pushed her in and began driving. Defendant told her "Don't worry, I ain't going to hurt you," and said that he "just wanted to be with a white woman and he wanted to suck on a white woman's titty." The complainant did not see the broken bottle once they were in the car, but did notice a red pen glued to the dashboard of the car and the word "Deville" on the glove compartment. She picked up a Kleenex defendant had used to wipe his bleeding hand, but defendant grabbed it from her and threw it out the car window as he drove down an alley. He then stopped the car, parking so that the passenger door was against a garage and could not be opened. Defendant pulled the complainant's shirt up and removed her bra, then began sucking on her breast. The complainant tried to push defendant away, and told him that she was pregnant and had a venereal disease. Defendant pulled her pants and underwear down to her knees, inserted one of his fingers into her vagina and then placed his mouth on her vagina.

After hearing a noise nearby, defendant told the complainant to pull her pants up and he started the car. Defendant refused to let her out of the car, but asked her where she was going. She did not want to tell him where her friend lived, so she said that she had been going to 63rd Street and California Avenue, where he then took her. When defendant let the complainant out of the car he told her not to go to the police and not to look back at him as he drove away. However, she did look back and memorized defendant's license plate number; she

then ran to a gas station and called the police. After telling the police what had happened, they drove her to an alley behind a house where she identified defendant and his car, noting particularly the red pen glued to the dashboard of the car and the word "Deville" on the glove compartment.

On cross-examination, the complainant admitted that a few years previously she had been convicted of two counts of possession and one count of delivery of a controlled substance. She denied having taken any drugs on the night of the incident.

Officer Robert Mantia testified for the State that he and his partner, Kenneth Abels, responded to the complainant's call. After detailing what she had told him about the incident, Mantia testified to the events leading up to defendant's arrest. Officer Abels testified that he brought the complainant back to the scene of the incident, where he found a blood-soaked Kleenex. Officer Ellis-Williams testified that the blood on the Kleenex was type AB, which was defendant's type, and that the complainant had type O blood. Officer Kulak testified that he received the complainant's call and that based on the license number she provided, he determined the name and address of the owner of the car defendant drove. He called the owner of the car and was told that the owner's son had just brought the car home. When viewing the car he noticed that there was blood on the front seat.

The defendant testified that on September 10, 1984, he was driving northbound on Western Avenue when he saw the complainant hitchhiking. He stopped and offered her a ride if she "wouldn't mind [his] nibbling on her breasts." The complainant hesitated, but then got into his car. They drove to an alley, talked awhile, and then the complainant lifted up her blouse and defendant proceeded to suck on her right breast. He then drove her to the area of 63rd Street and California, where she got out of the car. He specifically denied forcing the complainant into the car, threatening her with a broken bottle, removing her pants, inserting his finger in her vagina or placing his mouth on her vagina.

After being sequestered for a night, the jury returned a verdict finding defendant guilty of aggravated criminal sexual assault and attempt (aggravated criminal sexual assault) and acquitting him on the remaining charges. After hearing evidence on aggravation and mitigation, the trial court sentenced defendant to a single term of 60 years, merging the count of attempt (aggravated criminal sexual assault) with the count of aggravated criminal sexual assault. Defendant appeals.

OPINION

Defendant contends that the criminal sexual assault statute (Ill. Rev. Stat. 1985, ch. 38, pars. 12—12 through 12—14) is overbroad and void for vagueness. That statute provides in part as follows:

"12—12. Definitions. ***

* * *

(d) 'Force or threat of force' means the use of force or violence, or the threat of force or violence, including but not limited to the following situations:

(1) when the accused threatens to use force or violence on the victim or on any other person, and the victim under the circumstances reasonably believed that the accused had the ability to execute that threat; or

(2) when the accused has overcome the victim by use of superior strength or size, physical restraint or physical confinement." Ill. Rev. Stat. 1985, ch. 38, par. 12—12.

"12—13. Criminal Sexual Assault. (a) The accused commits criminal sexual assault if he or she:

(1) commits an act of sexual penetration by the use of force or threat of force; ***." Ill. Rev. Stat. 1985, ch. 38, par. 12—13.

"12—14. Aggravated Criminal Sexual Assault. (a) The accused commits aggravated criminal sexual assault if he or she commits criminal sexual assault and any of the following aggravating circumstances existed during the commission of the offense:

(1) the accused displayed, threatened to use, or used a dangerous weapon or any object fashioned or utilized in such a manner as to lead the victim under the circumstances reasonably to believe it to be a dangerous weapon." (Ill. Rev. Stat. 1985, ch. 38, par. 12—14.)

Defendant contends that "one cannot engage in sexual intercourse without some amount of physical force," and "because the definition of force is not limited to that amount required to make an unwilling partner acquiesce in participating in sexual conduct *** [the statute] could subject an individual to conviction and punishment for the offenses of criminal sexual assault and aggravated criminal sexual assault for engaging in private consensual sexual activities which are protected by the right to privacy guaranteed by the Fourteenth Amendment."

██ The Illinois Supreme Court addressed this argument in *People v. Haywood* (1987), 118 Ill. 2d 263, 515 N.E.2d 45, in which it upheld

the constitutionality of the statute, stating:

> "[W]e consider that a person of common intelligence and experience can distinguish, without difficulty, between sexual acts accomplished by force, as that term is meant in the statute, and, for example, sexual activity between consenting adults." (118 Ill. 2d at 274.)

Pursuant to *Haywood*, defendant's conviction must be affirmed on this issue, and we so hold.

Defendant next contends that he was denied his right to the effective assistance of counsel, arguing that defense counsel erred in failing to: (1) request that prospective jurors be questioned concerning their potential racial bias; (2) file any pretrial motions challenging the information; (3) object to the complaining witness' repetitious testimony; (4) offer instructions on the lesser included offense of simple criminal sexual assault; (5) object to the judge's order sequestering the jury or inquire into a voided "not guilty" verdict form; and (6) present factors in mitigation at the sentencing hearing.

■ In alleging that he has received ineffective assistance of counsel, a defendant must prove that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. (*People v. Albanese* (1984), 104 Ill. 2d 504, 525, 473 N.E.2d 1246, citing *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) There is a strong presumption that counsel's conduct " 'falls within the wide range of reasonable professional assistance,' " and if a claim can be disposed of on the ground of lack of sufficient prejudice to defendant, that course should be taken. *Albanese*, 104 Ill. 2d at 526-27, quoting *Strickland v. Washington* (1984), 466 U.S. 668, 689, 80 L. Ed. 2d 674, 694-95, 104 S. Ct. 2052, 2065-66.

The State contends that a defendant is entitled to competent, not perfect or successful representation (*People v. Rangel* (1987), 163 Ill. App. 3d 730, 576 N.E.2d 936), and further maintains that defendant has failed to overcome the presumption that his counsel's actions were sound trial strategy. (*People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.) The State argues further that even if we assume that errors were committed, those errors did not affect the outcome of the case.

■ Addressing itself to the substance of defendant's argument, the State asserts correctly that the decision whether to file a pretrial motion is one of strategy which has no bearing on the competency of counsel. (*People v. Purnell* (1984), 126 Ill. App. 3d 608, 624, 467

N.E.2d 1160.) In addition, defendant has not shown that the outcome of his case would have been different had such a motion been made and granted. Since defendant was not sentenced on the attempt count he has not been sufficiently prejudiced by his counsel's failure to challenge the information on that basis.

The State next argues that the trial judge did not err in failing to question prospective jurors as to their potential racial bias, contending that the circumstances in this case did not require such questions. (*Ristaino v. Ross* (1976), 424 U.S. 589, 47 L. Ed. 2d 258, 96 S. Ct. 1017.)

> "In *Ham* [*v. South Carolina* (1973), 409 U.S. 524, 35 L. Ed. 2d 46, 93 S. Ct. 848,] however, we recognized that some cases may present circumstances in which an impermissible threat to the fair trial guaranteed by due process is posed by a trial court's refusal to question prospective jurors specifically about racial prejudice during voir dire. ***
>
> By its terms *Ham* did not announce a requirement of universal applicability. Rather, it reflected an assessment of whether under all of the circumstances presented there was a constitutionally significant likelihood that, absent questioning about racial prejudice, the jurors would not be as 'indifferent as [they stand] unsworne.' " (424 U.S. at 595-96, 47 L. Ed. 2d at 263-64, 96 S. Ct. at 1021.)

Defendant cites *Turner v. Murray* (1986), 476 U.S. 28, 90 L. Ed. 2d 27, 106 S. Ct. 1683, in support of his contention that his case presented circumstances requiring inquiry of the jury as to their racial bias. In *Turner*, the Court reversed the denial of defendant's *habeas corpus* petition, holding that a capital defendant, involved in an interracial crime, was entitled to have prospective jurors questioned on the issue of racial bias. In a footnote the Court noted that it was not retreating from the holding in *Ristaino* that it is within the trial court's discretion to decide what measures to take in screening out racial prejudice. 476 U.S. at 35 n.7, 90 L. Ed. 2d at 36 n.7, 106 S. Ct. at 1687 n.7.

In both *Ristaino* and *Turner* the trial court refused a specific request by defense counsel to question jurors concerning their potential racial bias. In the instant case defense counsel did not make such a request; in any event, defendant has not demonstrated circumstances, beyond the fact that an interracial crime is involved, creating the need for specific questioning regarding racial bias and hence has not demonstrated ineffective assistance of counsel.

The State maintains that failure to offer a jury instruction on a

lesser included offense, in this case criminal sexual assault, does not amount to ineffective assistance of counsel, because defense counsel may have decided not to request the lesser included offense instruction, hoping to gain an acquittal on the more serious offense. (*People v. Chapman* (1981), 94 Ill. App. 3d 602, 418 N.E.2d 995.) It also argues that, while perhaps not the best trial strategy, defense counsel's failure to object to repetitive testimony, failure to object to the jury being sequestered and failure to inquire into a voided "not guilty" verdict were reasonable and do not amount to ineffective assistance of counsel.

■ Substantial prejudice due to ineffective assistance of counsel cannot be established by mere conjecture or by second-guessing defense counsel's tactics. (*People v. Rangel* (1987), 163 Ill. App. 3d 730, 516 N.E.2d 936.) Here, defendant has failed to overcome the presumption that counsel's alleged errors were not trial strategy and has also failed to demonstrate that the result of his trial would have been different absent these alleged errors. *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.

Defendant also claims that his counsel's failure to present argument in mitigation at the sentencing hearing deprived him of the effective assistance of counsel at his post-trial proceedings. Compounding this problem, according to defendant, is his statement to the judge:

> "Things at the trial, there was things at the trial that I didn't bring out because my P.D., my Public Defender, Doug Kragness, felt it was better not to bring this out. By me not bringing it out at the trial, I walked off that stand looking guilty. It's too late to do anything about that now."

Defendant argues that because he raised the issue of the ineffectiveness of his counsel at his post-trial hearing he is entitled to a new post-trial hearing with new counsel. Thus, he argues, even if this court finds that he did have effective assistance of counsel at trial, it must remand this case for a new post-trial hearing. The State responds that failure to offer evidence in mitigation at a sentencing hearing does not demonstrate incompetence of counsel, unless the sentencing proceeding is reduced "to a farce or sham." *People v. Kubat* (1983), 94 Ill. 2d 437, 447 N.E.2d 247; *People v. Clark* (1980), 82 Ill. App. 3d 490, 402 N.E.2d 437.

■ Defendant has not shown this court that there were mitigating factors that were not brought to the trial court's attention. His statement to the trial judge was vague and does not by itself create a reasonable probability that the judge's sentencing decision would have

been different had the judge known of those "things" defendant failed to bring out at trial. Defendant has not met the test to prove ineffective assistance of counsel, and his conviction must be affirmed on this issue.

Defendant next contends that the complaining witness was allowed to repeat her version of the incident, thus reinforcing it in the minds of the jury. In her initial testimony on direct examination the complainant gave a detailed account of the occurrence. She then gave an abridged version of it in response to questions regarding her initial statements to the police, and also testified that a more detailed statement she gave at the police station was consistent with her prior testimony. Finally, she once again detailed her story to the jury when she identified exhibits and markings on a map. Police officers called to testify also repeated statements made by the complainant to them on the night of the occurrence. Defendant maintains that these statements were hearsay and not properly admitted into evidence.

■ The State responds, and we so find, that defendant failed to object to the repetition of complainant's testimony nor did he raise the issue in his post-trial motion; he therefore failed to preserve any alleged errors for review. (*People v. Young* (1985), 133 Ill. App. 3d 886, 479 N.E.2d 494.) Defendant also failed to object to the police officers' testimony and therefore has also waived his argument as to that issue. In view of the extreme improbability of defendant's version and the corroborating bloody Kleenex, the State's case was a strong one and any error was not plain error that would obviate the waiver.

■ In his initial brief, defendant argues that there was no evidence that he had taken a substantial step toward the completion of a forced act of intercourse, which is a necessary element in the crime of attempt (aggravated criminal sexual assault) (Ill. Rev. Stat. 1985, ch. 38, par. 8—4 ("A person commits an attempt when, with a intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense")), and sought to have his conviction on that charge reversed. The State responded that the trial judge sentenced defendant only for the crime of aggravated criminal sexual assault, and in the absence of the imposition of a sentence, an appeal from his conviction of attempt cannot be taken. (*People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1.) In his reply, defendant correctly contends that his conviction for attempt must be vacated because of the incomplete judgment (*People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1); see also Supreme Court Rule 366 (107 Ill. 2d R. 366(a)(5) ("In all appeals the reviewing court may, in its discretion,

and on such terms as it deems just, \*\*\* enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief \*\*\* that the case may require")) and we so hold.

Defendant also contends that the instructions given to the jury failed to inform the jury of the actual charges against defendant. The jury was instructed as follows:

"A person commits the offense of attempt when he, with intent to commit the offense of aggravated criminal sexual assault, does any act which constitutes a substantial step toward the commission of the offense of aggravated criminal sexual assault.

The offense attempted need not have been committed." Illinois Pattern Jury Instructions, Criminal, No. 6.05 (2d ed. 1981) (hereinafter IPI Criminal 2d).

"A person commits the offense of criminal sexual assault when he commits an act of sexual penetration by the use of force or threat of force." IPI Criminal 2d No. 1131 (Supp. 1987).

"The term 'sexual penetration' means any contact, however slight, between the sex organ of one person and the mouth of another person, or any intrusion, however slight, of any part of the body of one person into the sex organ of another person, including, but not limited to, cunnilingus." IPI Criminal 2d No. 11.64 (Supp. 1987).

"A person commits the offense of aggravated criminal sexual assault when he commits criminal sexual assault and displayed, threatened to use, or used a dangerous weapon." IPI Criminal 2d No. 11.33 (Supp. 1987).

"To sustain the charge of attempt, the State must prove the following propositions:

*First*: That the defendant performed an act which constituted a substantial step toward the commission of the offense of aggravated criminal sexual assault; and

*Second*: That the defendant did so with intent to commit the offense of aggravated criminal sexual assault.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

(IPI Criminal 2d No. 6.07.)

The jury was also instructed as to defendant's presumption of innocence and the State's burden of proving him guilty beyond a reasonable doubt.

The information charged defendant with two counts of aggravated criminal sexual assault: forced cunnilingus and the forceful insertion of a finger in the complainant's vagina. The attempt (aggravated criminal sexual assault) count alleged sexual intercourse as the intended completed act. Defendant asserts that the jury was not instructed properly, because they were not told they had to find that he had the intent to compel intercourse and that he took a substantial step toward completing that act. Nor was the jury told they had to find that defendant performed those acts of penetration of which he was charged. Defendant contends that the jury may have convicted him based on a belief that some other act of sexual penetration occurred.

The State correctly responds that defendant waived this issue by failing to preserve the error at the trial level. Although he objected to the attempt instruction and raised the issue in his post-trial motion, defendant failed to offer a "correct" jury instruction in lieu of the instruction tendered. (*People v. Foster* (1982), 103 Ill. App. 3d 372, 431 N.E.2d 430.) Defendant did not object to the instructions on criminal sexual assault and has also waived argument on this issue.

If we were to find that defendant has not waived this issue, we would hold that there has been no error. The jury must be informed of the material elements of an offense, and when an essential element of the offense is omitted from a jury instruction, a guilty verdict must be set aside. (*People v. Stromblad* (1978), 74 Ill. 2d 35, 383 N.E.2d 969; *People v. Hazen* (1969), 104 Ill. App. 2d 398, 244 N.E.2d 424.) Here, the jury was adequately apprised of the elements of the offense of aggravated criminal sexual assault, since the State need not prove the type of sexual penetration as an element of the offense. (*People v. Tanner* (1986), 142 Ill. App. 3d 165, 168-69, 491 N.E.2d 776.) With regard to defendant's argument on the attempt count, as we have previously noted he was not sentenced for this offense; therefore, he cannot successfully claim prejudice as a result of the alleged error.

Defendant contends that the State's rebuttal argument consisted of an attack on defense counsel and an attempt to shift the burden of proof to defendant. He complains that the following statements were improper because they disparaged defense counsel and accused him of testifying:

"Ladies and gentlemen, what you have seen this week and last

week during this trial is something that happens in this building when defendants like Mr. Gaines Webster are trapped by the evidence, when there is no way out. They come into this courtroom. They make up a quick story to tell you on the stand. They tell you a story that is full of holes and full of baloney. Then their lawyers get up here and tell you there is reasonable doubt everywhere—

DEFENSE COUNSEL: Objection.

THE COURT: Overruled.

PROSECUTOR: They hope, they just hope anybody on this jury buys that garbage.

\* \* \*

But his lawyer just testified, without an oath, testified, well, maybe there is a fantasy; maybe she got hurt beforehand. \* \* \*

Ladies and gentlemen, you can't believe a word he said or his lawyers. Because it is a fantasy and there is no evidence to support it.

\* \* \* All they are doing, ladies and gentlemen, is trying to confuse you, trying to smokescreen you, trying to make you look at something else that isn't the issue."

Defendant contends that the following statements were "a blatant attempt to shift the burden of proof to defendant."

"It is very curious that throughout Mr. Kragness' argument, the whole time that he is standing here talking to you, that he didn't say one word to you about what Gaines Webster told you on that stand. That is one thing he didn't bother to talk about. It might be the one thing he doesn't want you to think about. But I will talk about it. I will tell you what he said. And I will show you how that doesn't make any sense and that there is no reason to believe him.

Ladies and gentlemen, the first thing he was asked on the witness stand was about his background. He is a convicted armed robber. The only reason Judge Berkos let you hear that evidence is because you can use it to decide whether or not he is a liar. You can use it to decide whether this individual, this one right here, who is the kind of person who can take a weapon, threaten somebody and take their property, is the kind of person that you can trust, the kind of person that you can depend on, the kind of person you want to believe. Keep that in mind when you think about every little word that came out of his mouth on that witness stand.

When he came up on that witness stand last week, everyone

in the courtroom sat up. All of you did; and we did. We wanted to hear exactly what he had come up with. Because I had no idea of what he was going to say. I expected to hear some explanations. I expected to hear his side of the story that made some sense, his answers to this evidence. I wanted to know why [the complainant], a woman he had never seen before, a woman he had never had anything to do with before, would get into a car in the middle of the night on a dark street with this complete stranger.

I wanted to hear, ladies and gentlemen, how she got her injuries. And ladies and gentlemen, I expected to hear, most importantly, why would she, if this never happened—why would she accuse this poor little Mr. innocent man of these terrible crimes. Why? Where is the explanation?

Ladies and gentlemen, his testimony made me scratch my head. He didn't explain a thing. His lawyer can tell you they didn't have to prove anything; and that is right. But the minute he gets up on that witness stand, raises his hand to tell an oath, he is expected to tell the truth. And he didn't. He did everything to hide it, to confuse it and to make himself out and to squirm out of this courtroom."

■ It is improper to argue that the defense is attempting to discredit the victim or fabricating a defense in cases where there is no evidence thereof or to refer to the conduct of defense attorneys in other cases. (*People v. Emerson* (1983), 97 Ill. 2d 487, 455 N.E.2d 41; *People v. Jackson* (1983), 119 Ill. App. 3d 951, 458 N.E.2d 59.) It is also highly improper to mislead the jury into believing that a defendant must prove something. (*People v. Giangrande* (1981), 101 Ill. App. 3d 397, 428 N.E.2d 503.) However, it is not improper to comment on defendant's failure to submit any evidence that would tend to refute the case against him. *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.

■ The defense's suggestion that the victim in this case received her injuries prior to being picked up by defendant can be considered as inviting the State's comments that this was a "smokescreen." Defendant cannot complain of statements which have been invited by his counsel. (*People v. Jackson* (1981), 100 Ill. App. 3d 318, 426 N.E.2d 618.) Even if improper remarks were made, a verdict will not be reversed unless the record as a whole shows that the remarks constituted a material factor in defendant's conviction. (*People v. Satchell* (1981), 94 Ill. App. 3d 422, 418 N.E.2d 1063.) Here, the jury was admonished not to consider opening or closing statements as evi-

dence, and it is unlikely that the prosecutor's closing comments were the deciding factor in the jury's decision.

Defendant maintains that the trial court considered improper factors and abused its discretion in sentencing him to 60 years' imprisonment, the maximum extended term. At the sentencing hearing the State informed the trial judge that defendant had convictions for battery in 1975 and armed robbery in 1981, for which he had been paroled in February 1984, approximately seven months before this offense. Defense counsel argued that the court should consider defendant's age in sentencing him, and then defendant made a statement to the court in which he maintained his innocence and informed the court that he was attending school at the time of the incident.

"THE COURT: The Court has taken into consideration all the factors in aggravation, mitigation. In mitigation I find quite little, if any, mitigating circumstances. You dropped out of school. You went in the army. You failed there. You came out in civilian life and you failed there. Certainly that your conduct threatened serious physical harm.

DEFENDANT: I would like the record to reflect that I was young when I was in the army.

THE COURT: We were all young when we were in the army. That's no excuse.

DEFENDANT: When you're young you make mistakes.

THE COURT: You've made some, some rather big ones. You threatened physical harm. You caused harm to this gal according to the testimony. You certainly knew that your conduct was going to cause harm. No excuse for your conduct.

DEFENDANT: Your Honor, I believe I was found innocent of that causing harm to this lady.

THE COURT: Great physical harm. You were found not guilty of great physical harm. The Court is not saying you caused great serious physical harm.

You certainly caused some horrible mental harm to this lady. I'm sure she'll never forget what happened to her and I'm sure it will affect her much more severely than physical harm will.

As to whether your criminal conduct is likely to reoccur, I don't think there is any question with your background that it's not safe to have you on the street.

* * *

The maximum under the law that I can sentence you is six to thirty years except because of your criminal background and the Court's feeling about you, I can apply extended term."

The trial judge then sentenced defendant to 60 years' imprisonment for aggravated criminal sexual assault, ruling that the count of attempt (aggravated criminal sexual assault) merged with the count of aggravated criminal sexual assault because both counts were based on the same act.

Defendant argues that he was acquitted of the charge of aggravated battery, based on the infliction of bodily harm, and therefore the trial court improperly determined that he caused harm to the complaining witness. He contends that the jury concluded he did not inflict bodily harm on the complaining witness, and argues that the judge erred when he considered mental harm, because mental harm is inherent in any sexual assault and already considered by the legislature in setting the range of sentences.

Defendant further maintains that the trial court erred in considering his unemployment when imposing sentence. He also argues that the trial court abused its discretion in sentencing him to the maximum term permitted, considering that the complaining witness was not physically injured, a forced act of sexual intercourse was not completed, and defendant demonstrated potential for rehabilitation, evidenced by the fact that he was attending school.

The State responds that a trial judge's decision on sentencing is entitled to great weight and deference and should not be disturbed on review absent a showing of abuse of discretion. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 493, 431 N.E.2d 344.) In making its decision on sentencing, a trial court may properly consider the defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age, as well as the seriousness of the crime. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) There is a strong presumption that a judge's sentencing decision is based upon proper legal reasoning. *People v. Goodman* (1983), 116 Ill. App. 3d 125, 451 N.E.2d 607.

The trial judge questioned defendant about his past and included questions regarding his employment. Such questions are proper, as they relate to defendant's potential for rehabilitation. The trial judge's statements regarding harm to the complaining witness are also relevant to the seriousness of defendant's crime. Defendant was eligible for an extended-term sentence because of his felony conviction within 10 years of this conviction (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b)(1)), because of the seriousness of his crime and the threat he posed to society. In view of all of the factors cited above, he has not shown that the trial judge abused his discretion in sentencing him to the maximum term. The trial judge is affirmed on this issue.

For the foregoing reasons, defendant's conviction of attempt (aggravated criminal sexual assault) is vacated, and the remaining judgment of the circuit court of Cook County is affirmed.

Vacated in part and affirmed in part.

BILANDIC and EGAN, JJ., concur.