UNITED STATES ex rel. Gaines WEBSTER, Petitioner,

v.

George DeTELLA, Warden, and James Ryan, Attorney General,[1] Respondents.

No. 96 C 522.

United States District Court, N.D. Illinois, Eastern Division.

May 22, 1997.

---

1. Attorney General Ryan is improperly named in this action. Under Rules 2(a) and 2(b) of the Rules Governing Section 2254 Cases in the United States District Courts, when a petitioner is currently in custody, the petition for habeas corpus relief should only name the state officer having custody of the petitioner. Only when the petitioner may be subject to future custody should the petition name as respondent both the state officer who presently has custody over the applicant and the state attorney general. *See* RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS, *Rule 2(a) & (b); see also Hogan v. Hanks*, 97 F.3d 189, 190 (7th Cir.1996) (citing *Cruz v. Warden of Dwight Correctional Center*, 907 F.2d 665, 665 n. 1 (7th Cir.1990)). As Webster is now in state custody, Attorney General Ryan is not a proper party.

Gaines Webster, Big Muddy River Correctional Center, Ina, IL, pro se.

Paul James Chevlin, Arleen C. Anderson, Attorney General's Office, Chicago, IL, for George DeTella, Warden.

Arleen C. Anderson, Attorney General's Office, Chicago, IL, for James Ryan, Attorney General.

### MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

 Gaines Webster brings this petition for a writ of habeas corpus, claiming that his continued imprisonment is in violation of the United States Constitution. After carefully reviewing it, we deny the petition and dismiss the action, for the reasons explained below.

### RELEVANT FACTS

 In reviewing a case on petition for writ of habeas corpus, a federal court presumes that the facts found by the state courts are correct. *Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981). A petitioner may rebut this presumption with clear and convincing evidence

of different facts. 28 U.S.C. § 2254(e)(1) (1997). The petitioner has not challenged the state court's factual findings here, so we take the following factual account from the opinion of the state appellate court.

The complaining witness testified that, on September 10, 1984, she was walking northbound on California Avenue when she noticed a car drive by slowly while the man driving looked at her. The car turned west off of California Avenue onto 65th Street, and the driver parked it in the first space with the motor running. The complainant turned west onto 64th Street. As she passed an alley, the driver of the car she had seen grabbed her around the throat, holding a broken bottle, with which he cut her on the throat and forearm. The man ordered her not to scream and said "I could still fuck you if I cut you." He forced her into his car, and drove away. As he drove, he told her, "Don't worry, I ain't going to hurt you," and said that he "just wanted to be with a white woman and he wanted to suck on a white woman's titty."

The complainant did not see the broken bottle once she was in the car. She did, however, notice a red pen glued to the dashboard of the car and the word "deVille" on the glove compartment. When she picked up a tissue the driver had used to wipe his bleeding hand, the driver grabbed it and threw it out the window as they drove down an alley. He then stopped the car with the passenger side door against a garage so that the door could not be opened. The driver pulled the complainant's shirt up and removed her bra, and began sucking on her breast. The complainant tried to push him away, and told him that she was pregnant and that she had venereal disease. The driver pulled her pants and underwear down to her knees, and inserted one of his fingers into her vagina. He then placed his mouth on her vagina. After a noise occurred nearby, the driver told the complainant that she could pull her pants up. He asked her where she had been going and drove her to 63rd Street and California Avenue, where he let her out of the car. As he drove away, the complainant memorized his license plate number. She went to a gas station and called the police, who arrived a short time later. After hearing her story, the police took her to a house where she identified the car and the driver, who was Webster. She identified the car by the red pen on the dashboard and the word "deVille."

After testifying to the events of the night in detail, the complainant then gave a summary of the same events, explaining what she had told the police officers, and also testified that a more detailed statement which she gave at the police station was consistent with her prior testimony. On cross-examination, the complainant admitted that she had been convicted of two counts of possession and one count of delivery of a controlled substance a few years before. She denied taking any drugs on the night of the assault.

Two police officers who responded to the complainant's call testified, and described how they had traced the license plate number the complainant had given them, contacted the owner, and found that the owner's son had just brought the car home. Upon examining the car, one officer noticed that there was blood on the seat. The police also found a tissue with blood after searching with the complainant; the tissue turned out to have type AB blood on it, which is apparently Webster's blood type. The complainant's blood is type O. The police also repeated the story that the complainant had told them about the assault.

Webster testified that he had been driving northbound on California Avenue when he saw the complainant hitchhiking. He offered her a ride if she "wouldn't mind [him] nibbling on her breasts." She hesitated and then got into his car, whereupon he drove to an alley and proceeded to suck on her right breast. He then drove her to 63rd Street and California Avenue, where she got out of the car. Webster specifically denied forcing her into his car, threatening her with a broken bottle, removing her pants, inserting his finger into her vagina, or placing his mouth on her vagina.

The jury initially informed the judge that they could not agree on a verdict. The judge ordered them sequestered for the night, and the following day the jury returned a verdict, finding Webster guilty of one count of aggra-

vated criminal sexual assault and one count of attempt (aggravated criminal sexual assault), and acquitting him of aggravated battery, aggravated kidnapping, and a second count of aggravated criminal sexual assault. After a sentencing hearing, the judge sentenced Webster to a single term of 60 years, finding that the sentence for attempt should be merged with the sentence for the assault

Webster appealed, raising the following arguments: (1) the statute under which he was charged and convicted of aggravated criminal sexual assault was unconstitutionally vague; (2) the repetitious testimony regarding the complainant's version of events on the night of the assault unfairly reinforced her story in the minds of the jury; (3) improper prosecutorial comments deprived him of a fair trial; (4) the court improperly instructed the jury on aggravated criminal sexual assault and attempt of the same offense; (5) there was insufficient evidence to support his conviction on attempt; (6) the extended term sentence imposed by the judge was excessive; and (7) he received ineffective assistance of counsel, because his attorney failed to: seek questioning on racial bias during voir dire (Webster is black and the complainant is white); file any pretrial motions challenging the information; object to the complainant's repetitious testimony; offer jury instructions on the lesser included offense of simple criminal sexual assault; object to the judge's order sequestering the jury or inquire into a voided "not guilty" verdict form; or present a mitigating factor (Webster's recent enrollment in school) at the sentencing hearing.

The appellate court found that Webster was barred from bringing his second and fourth claims, because his attorney had not objected to the repetitious testimony or proffered different instructions, and thus any errors were waived. The appellate court held that the aggravated criminal sexual assault statute was not constitutionally defective, and that although some of the prosecutor's comments were improper, they did not constitute the deciding factor in the jury's verdict or otherwise deprive Webster of a fair trial. In Webster's favor, the court agreed with him that there was insufficient evidence of attempt to support that conviction, and vacated the attempt conviction. The court nevertheless found that the 60-year extended term sentence was proper, as the trial judge had considered the appropriate factors in sentencing Webster.[2] Finally, the appellate court rejected Webster's claim that he received ineffective assistance of counsel, finding that he had not "overcome the presumption that counsel's alleged errors were not trial strategy," nor had he shown that the errors affected the outcome of the trial. *People v. Webster*, 175 Ill.App.3d 119, 128, 124 Ill.Dec. 760, 765, 529 N.E.2d 741, 746 (1st Dist.1988).

Webster petitioned for leave to appeal to the Illinois supreme court, raising only the claim that he received ineffective assistance of counsel, because his attorney (a) failed to inquire into jurors' racial bias; (b) failed to object to the repetitious testimony; (c) failed to offer an instruction on the lesser included offense of simple criminal sexual assault; and (d) failed to provide any meaningful representation at sentencing. The PLA was denied on February 1, 1989.

Webster then began state post-conviction proceedings in the circuit court. His petition in that court raised the following claims: there was insufficient evidence of weapon use to support the conviction for aggravated criminal sexual assault; his trial attorney's failure to elicit testimony from the witness about the passage of time during the course of the assault constituted ineffective assistance of counsel; he received ineffective assistance from both trial and appellate counsel because they failed to "adequately argue or advance the Constitutional errors described above"; and he was denied a fair trial by a conspiracy among the prosecutors, police witnesses, and complaining witness to conceal evidence. His petition was denied. On November 28, 1990, Webster filed a notice of appeal from the circuit court decision. Although several volumes of record were filed

---

**2.** The sentence range was originally six to thirty years, but Webster was eligible for an extended term sentence because he was convicted of battery in 1975 and armed robbery in 1981. At the time of the assault at issue here, he had just been paroled for seven months from the armed robbery imprisonment.

in the appeal, Webster never filed an appellate brief. On January 29, 1992, the appeals court granted Webster's motion to withdraw the petition and dismissed the appeal. Webster then attempted to bring a second appeal on post-conviction review, but that appeal was dismissed as untimely.

Webster has now filed a petition for a writ of habeas corpus in this court, in which he raises the following claims. First, he contends that the repetitious testimony of the complaining witness deprived him of a fair trial. Second, he claims that the jury instructions on the sexual assault charge did not inform the jury of the essential elements of the charges against him. Third, he complains that his sentence is excessive. Fourth, he argues that the evidence of weapon use was insufficient to support a conviction for aggravated criminal sexual assault. Fifth, Webster claims that his trial counsel was unconstitutionally deficient because the attorney failed to object to the repetitious testimony, offer jury instructions on simple criminal sexual assault, provide meaningful representation at sentencing, object to the judge's order that the jury be sequestered or inquire into the voided "not guilty" verdict form, present expert testimony regarding the effect of the complainant's previous drug use on her testimony, or elicit testimony from the complainant regarding whether Webster used a dangerous weapon during the sexual assault itself.[3]

## LEGAL STANDARDS

■ The preliminary step in any consideration of a petition for habeas corpus is determining whether the petitioner has complied with the requirements to exhaust state remedies and avoid procedural default of the substantive claims by adequately presenting them to the state courts. *Lostutter v. Peters,* 50 F.3d 392, 394 (7th Cir.1995). "Exhaustion is accomplished when claims have been presented to the highest state court for a ruling on the merits, or, when the claims could not be brought in state court because no remedies remain available at the time the federal petition is filed." *Farrell v. Lane,* 939 F.2d

409, 410 (7th Cir.1991) (citations omitted). As the Supreme Court noted in *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 2554–55, 115 L.Ed.2d 640 (1991), the exhaustion requirement is "grounded in principles of comity; in a federal system the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights."

■ The phrase "procedural default" covers a multitude of sins, but it is primarily addressed to two situations: where the prisoner's federal claims in his habeas petition were not "fairly presented" to the state courts, thus depriving them of the first opportunity to address the claims, *Jones v. Washington,* 15 F.3d 671, 675 (7th Cir.1994) or where the state court decision supporting the petitioner's confinement was decided on an adequate and independent state law ground (either substantive or procedural), *Coleman v. Thompson,* 501 U.S. at 729–32, 111 S.Ct. at 2553–55. *See United States ex rel. Balderas v. Godinez,* 890 F.Supp. 732, 738 (N.D.Ill.1995) (discussing the range of problems grouped together as "procedural default"). Forfeiture of claims by failing to comply with the state procedural requirements for raising them is an especially common problem for habeas petitioners. As the Court explained in *Coleman,* "[j]ust as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman,* 501 U.S. at 731–32, 111 S.Ct. at 2555. Procedural default of a petitioner's federal claims will bar their review in a federal habeas proceeding "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750, 111 S.Ct. at 2565.

For those claims that survive the exhaustion and procedural default analysis, the standard of review is strict. Under the ha-

---

**3.** Webster's habeas petition initially included a claim of ineffective assistance of appellate coun-
sel, but in his reply brief Webster "conceded" this issue.

beas corpus statute as recently amended, federal courts must deny a petition for habeas corpus with respect to any claim adjudicated on the merits in a state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see also Lindh v. Murphy*, 96 F.3d 856 (7th Cir.1996) (recently amended version of § 2254 applies to cases such as this one), *cert. granted*, — U.S. ——, 117 S.Ct. 726, 136 L.Ed.2d 643 (1997).[4] With the foregoing standards in mind, we now consider Webster's claims.

## ANALYSIS

### *Exhaustion and Procedural Default*

 Webster currently has no state remedies that remain available to him, so we consider his claims to be fully exhausted. Several of his claims are procedurally defaulted, however. For instance, his first and second habeas claims (the admission of repetitious testimony and the wording of the jury instructions on sexual assault) were waived by his attorney's failure to object to the testimony at trial or offer alternate instructions. *People v. Webster*, 175 Ill.App.3d at 129, 131, 124 Ill.Dec. at 766, 767–68, 529 N.E.2d at 747, 748–49. Under Illinois law, such waiver prevents the waived errors from being appealed, unless the error was plain error that created a substantial possibility of prejudice. *People v. Young*, 133 Ill.App.3d 886, 893, 479 N.E.2d 494, 499 (2nd Dist.1985). In Webster's case, the appellate court specifically considered whether the presumption of waiver should be overcome, and concluded that the grounds for an exception to the waiver rule were not present. *Webster*, 175 Ill.App.3d at 129, 131, 124 Ill.Dec. at 766, 768, 529 N.E.2d at 747, 749. These determina-

tions constitute an adequate and independent state ground for the state courts' denial of these claims that this court must respect. *Coleman v. Thompson*, 501 U.S. 722, 729–30, 111 S.Ct. 2546, 2553–55, 115 L.Ed.2d 640 (1991). Accordingly, Webster's first and second claims are procedurally defaulted.

 These procedural defaults might be excused if Webster could show good cause for the default and prejudice stemming from the default. *Id.* at 750, 111 S.Ct. at 2565. Webster presents no cause or prejudice for failing to proffer an alternate jury instruction on sexual assault. Webster does, however, claim cause and prejudice for the failure to object to the repetitious testimony—the cause being his trial attorney's deficient performance. While ineffective assistance of counsel may be adequate cause for procedural default, the attorney's conduct in failing to preserve the issue for appeal must have been so egregious that it falls below the level of adequacy mandated by the constitution. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986). In other words, the inmate must meet the test for ineffective assistance of counsel laid out in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), before the requirement of good cause for the default will be met.[5] Webster's claim that his attorney was constitutionally ineffective for failing to object to the repetitious testimony is part of his fifth habeas claim, and as such is discussed below. For the reasons outlined below, we find that the trial attorney's performance did not fall below the *Strickland* standard, and thus Webster has not shown good cause and prejudice for his procedural default of the repetitious testimony issue.

 Webster's fourth claim, that there was insufficient evidence of weapon use to

---

4. The Court is aware that the Supreme Court has granted certiorari to review the holding in *Lindh v. Murphy* that the newly amended version of § 2254(d) applies to pending habeas petitions. Therefore, although we believe that *Lindh v. Murphy* is good law, we have taken the precaution of analyzing Webster's claims under both the old and new versions of § 2254. No matter which version of § 2254 is applied, Webster does not prevail.

5. Ineffective assistance of counsel cannot be used as the cause for procedural default unless the ineffective assistance claim was presented to the state courts. *Murray v. Carrier*, 477 U.S. 478, 488–89, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986). Here, Webster appears to have adequately presented this issue to the state courts— he included the issue on direct appeal to the appellate court and in his petition for leave to appeal to the state supreme court.

support a conviction of aggravated criminal sexual assault,[6] is procedurally defaulted because Webster failed to present this claim on direct appeal, instead raising it for the first and only time in state circuit court in his post-conviction petition. Because this claim rested on evidence within the trial record, it could and should have been presented on direct appeal, and an Illinois state court would consider the claim barred from consideration on collateral review. *United States ex rel. Balderas v. Godinez*, 890 F.Supp. 732, 738 (N.D.Ill.1995). As Webster has not shown cause or prejudice for his failure to raise this issue on direct appeal, we consider the claim barred from our review.

■■■■ Finally, two aspects of Webster's ineffective assistance of counsel claim are also procedurally defaulted. The first aspect—that his attorney was deficient for failing to present expert testimony on the subject of the complainant's drug use—was raised for the first time in his habeas petition and was never presented to any state court. A prisoner must give the state courts "an opportunity to address those claims [that he wishes to raise in his habeas petition] in the first instance." *Coleman v. Thompson*, 501 U.S. at 732, 111 S.Ct. at 2555. Because Webster has never presented this claim to the state courts at all, we may not consider it upon a petition for habeas corpus. The second aspect, concerning his attorney's failure to elicit testimony from the complainant about whether Webster used a dangerous weapon during the sexual assault itself, was raised to a state court for the first (and only) time in Webster's post-conviction petition before the circuit court. Because Webster never actively appealed the denial of his post-conviction petition, he has waived all issues that could have been raised in such an appeal. *Jenkins v. Gramley*, 8 F.3d 505, 507 (7th Cir.1993). Thus, Webster has procedurally defaulted these two aspects of his ineffective assistance of counsel claim. Webster offers no cause or prejudice for these defaults.

Having found the above claims to be procedurally defaulted, we proceed to consider the merits of the remainder of Webster's claims.

*The Merits*

The following claims are still viable: Webster's claim that his sentence is excessive, and his claim that his trial attorney was unconstitutionally ineffective for failing to object to the repetitious testimony, offer jury instructions on simple criminal sexual assault, provide meaningful representation at sentencing, object to the judge's order sequestering the jury, and inquire into the voided "not guilty" verdict form. We take the ineffective assistance of counsel claims first.

Webster claims that the failure of his trial counsel to raise certain arguments deprived him of the effective assistance of counsel, in violation of the Sixth Amendment. The level of effectiveness required by the Sixth Amendment was laid out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That standard requires a reversal only if the petitioner can meet a two-pronged test: first, he must show that his attorney's performance "fell below an objective standard of reasonableness," *id.* at 688, 104 S.Ct. at 2064; and second, he must demonstrate that the deficiency of his lawyer's performance prejudiced him to the point that the proceeding was "fundamentally unfair and the result unreliable." *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir.1996). There is a "strong presumption" that an attorney's assistance was effective within the meaning of the constitution. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. In assessing the attorney's performance, we look at the whole of his representation of the petitioner, not simply the isolated examples about which the petitioner is complaining. *Kavanagh v. Berge*, 73 F.3d 733, 735 (7th Cir.1996). And as to the prejudice prong, "we employ a 'strong presumption of reliability' of the original verdict." *Id.*

Because both ineffectiveness and resulting prejudice must be shown, in appropriate

---

**6.** Webster argues that, because the only evidence of weapon use (threatening the complainant with the broken bottle) was during the initial abduction, not during the actual sexual assault itself, he cannot be considered to have "displayed, threatened to use, or used" a dangerous weapon as part of the sexual assault.

cases, a court may skip the ineffectiveness analysis and proceed directly to the prejudice question. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069–70. Here, we find that Webster was not substantially prejudiced by his trial counsel's various omissions, as explained more fully below.

■ We first consider the attorney's failure to object to the repetitious testimony regarding the complaining witness's version of events. The complainant was permitted to testify once in detail about what happened on September 10, 1984; she then gave a summary of the same events in testifying about what she told the police when they arrived after her call; and she testified a third time in more detail about the events as part of establishing that the written police report of her story, given later at the police station, was consistent with what actually happened. The two police officers also testified about what the complainant had told them.[7] Thus, the complainant's version of events was repeated five times, while Webster's version was given only once, during his own testimony. Webster notes that credibility was the central issue in his case, as his defense was that the complainant consented to the sexual contact. Referring to the complainant's admission that she was convicted of drug possession and delivery a few years earlier, Webster claims that, "when all is said and done, this case was the word of a convicted drug dealer against the word of a convicted armed robber." Petitioner's Reply at 3. He argues that the repetition of the complainant's story may have improperly reinforced it in the jurors' minds, tipping the balance in a case that hinged on credibility. Thus, he claims that his attorney's failure to object to the repetition may have been the straw that resulted in his conviction.

While Webster's trial attorney may have erred in not preventing the complaining witness from testifying three times about the same events,[8] we cannot discern any preju-

dice that resulted. The jury heard the complainant's admission of her prior drug conviction, and they surely grasped that, with Webster's consent defense, the case boiled down to a "swearing contest." Simply hearing a story more than once does not make it true—a fact within the common experience of the jurors. We do not find that, but for the trial attorney's failure to object to the complainant's repetitious testimony, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2067.

■ Webster's other claims of attorney error are no more successful. Webster complains that his attorney did not offer jury instructions on the lesser included offense of simple criminal sexual assault; object to the judge sequestering the jury or inquire into the voided "not guilty" verdict form; or adequately represent him at sentencing. With regard to the asserted deficiency in sentencing representation, the only defect that Webster identifies is the attorney's failure to tell the judge that Webster was then attending school. As Webster himself remedied this fault by telling the judge directly that he was a current student, we cannot see any prejudice from his attorney's failure to mention school attendance. Likewise, there was nothing to be gained from the attorney objecting to the judge's decision to sequester the jury, or inquiring into the voided "not guilty" form. Webster cites no law indicating that either of these actions had any legal significance, let alone that they could render an attorney's performance constitutionally deficient.

■ As for the decision not to offer a jury instruction on a lesser included offense, that is within the realm of trial strategy, an area in which Monday morning quarterbacking is discouraged. *See Strickland*, 466 U.S. at 688–89, 104 S.Ct. at 2064–65 (no hard and

---

7. Although Webster labels this testimony as hearsay, he does not specifically claim it as a basis for his habeas claims.

8. It is also quite possible that Webster's attorney's failure to object to the testimony was a deliberate strategic choice. While permitting a witness to repeat her story may have the effect of

strengthening it, it may also damage the witness if the different repetitions are inconsistent. We will not second-guess an attorney's trial strategy so long as it was "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

fast rules for defense counsel's conduct; such rules would "restrict the wide latitude counsel must have in making tactical decisions"). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. at 2065. Webster's attorney may well have believed that offering the jury only two options on the sexual assault counts—conviction on aggravated criminal sexual assault, where the State's evidence of the weapon use necessary to prove the "aggravated" nature of the crime was weak, or acquittal—would push the jury toward acquittal. That his strategy misfired is no proof of ineffectiveness; even the best trial attorney may misjudge trial strategy on occasion.

■■■■ For all of the above reasons, Webster's claim of attorney ineffectiveness fails. His second claim that his sentence is excessive also fails. In reviewing the length of sentences imposed for state crimes, federal courts must defer to the prerogative of state legislatures to determine the appropriate measure of punishment for various offenses *Harmelin v. Michigan,* 501 U.S. 957, 998–99, 111 S.Ct. 2680, 2703–04, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring); *Rummel v. Estelle,* 445 U.S. 263, 284–85, 100 S.Ct. 1133, 1144–45, 63 L.Ed.2d 382 (1980). Indeed, if the sentence imposed by a state court is within the range established by state law, "its severity is not sufficient grounds for relief on federal habeas corpus." *United States ex rel. Sluder v. Brantley,* 454 F.2d 1266, 1269 (7th Cir.1972).

Few limits on the length of sentences for state are imposed by the Eighth Amendment's prohibition against cruel and unusual punishments. One is that the sentence imposed by the state must be based on objective factors. *Coker v. Georgia,* 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977) (plurality opinion). The statute under which Webster was sentenced is based on an objective factor—the commission of two class X felonies within ten years, among other things. *See* Ill.Rev.Stat. ch. 38, §§ 1005–5–3.2(b)(1) & 1005–8–2 (1983) (now codified as amended at 730 ILCS 5/5–5–3.2(b)(1) & 5/5–8–2 (1997)). Webster admits that, as he had committed two class X felonies within ten years, he was eligible for an extended term sentence such as the one he received. He argues, however, that his sentence is disproportionate to the time served by other state inmates convicted of similar crimes. In support, he offers a chart showing mean sentences and time served for state prisoners who were released from prison in 1984.

There is a narrow disproportionality element to the Eighth Amendment, but as Justice Kennedy noted, "it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin,* 501 U.S. at 1001, 111 S.Ct. at 2705 (Kennedy, J., concurring) (citations omitted). In *Harmelin,* the Supreme Court held that a mandatory life sentence for a first-time criminal convicted of possessing 650 grams of cocaine did not violate the Eighth Amendment's proportionality requirement. *Id.* at 994–96, 111 S.Ct. at 2701–02. To paraphrase the Seventh Circuit's analysis of a similar proportionality claim in *Holman v. Page,* 95 F.3d 481, 485 (7th Cir.1996) (affirming life sentence without parole for juvenile), "[w]ith *Harmelin* as a point of reference, there is no chance" that Webster's sentence of 60 years for a second felony conviction of aggravated criminal sexual assault violates the Eighth Amendment. Webster's chart does not show otherwise; it shows only that many state prisoners receive shorter sentences for rape or sexual assault than he did, not that the sentence he received was disproportionate to the crime.

After carefully reviewing all of the parties' submissions, the Court concludes that, for the foregoing reasons, Webster's petition for a writ of habeas corpus must be denied.